JOHN HERBERT v. NICHOL SMITH, Surviving Executor of B. TUTHILL, dec'd, and others.

Herbert
v.
Ex'r of Tut-
hill et al.

B. Tuthill, by his will, after some specific bequests, ordered "that all the rest of his estate, real and personal, be sold by his executors and turned into money as soon after his decease as conveniently might be, and distributed among his children in the following proportions, viz : two shares to each of his sons, and one share to each of his daughters ;" and provided "that none of the legacies should lapse by the death of any of his children, but that, in case of such death, the share of the deceased child should go to his or her issue in the proportions aforesaid; and if such deceased child should leave no issue, then his or her share should go to and among his surviving children, in the like proportions."

Upon the death of the testator his children took vested interests in their respective shares, although payment could not be made until after the land should be sold, which in no wise affected the vesting of the estate.

By this bequest the whole interest or estate in their respective shares, and not a life estate merely, vested in the children, notwithstanding there are no words of perpetuity or inheritance ; the intent being clear.

The provision in case of the death of any of the children, with, or without issue, refers to their death in the life-time of the testator ; and goes no farther than to prevent the lapse of their legacies. It does not amount to a limitation over, on the death of a legatee after the testator's death, and before receiving the legacy.

The land not being devised, but a mere power of sale given to the executors ; between the death of the testator and sale of the land, the beneficial interest was in the heirs ; and they were entitled to the rents and profits.

The heirs had also a right to make a disposition or transfer of their vested interest. William, one of the sons, having previous to the sale mortgaged his proportion of the lands to the complainant, to secure a debt, and drawn an order on the executor to pay the proceeds of his share, when sold, to the mortgagee, which was accepted by the executor ; the money was fixed in the hands of the executor, and the mortgagee entitled to receive the amount of his debt out of the proceeds.

This order was not a bill of exchange, but a direction to the executor to pay such part of this money to the mortgagee, for a past valuable consideration received ; which the executor by his acceptance agreed to do.

A subsequent assignment by the same legatee to the executor of his share in the estate, is subject to the prior vested right of the mortgagee.

IN January, 1812, Benjamin Tuthill, of Middlesex, made his last will and testament, and in 1815 died, leaving the same unrevoked. After giving some specific bequests, he orders "that all the rest of his estate, real and personal, should be sold by his executors and turned into money as soon after his decease as con-

Oct. 1830.

Herbert
v.
Ex'r of Tut-
hill et al.

veniently might be, and distributed among his children in certain modes and proportions therein specified. He then provides that neither of the above legacies or shares shall lapse by the death of either of his children, but in case of such death the share of such deceased child shall go to his or her issue; and appointed his wife Anny, his son-in-law Nichol Smith, and his son William Wood-hull Tuthill, his executors. Smith and W. W. Tuthill proved the will and took upon themselves the burthen of the trust. The bill charges that W. W. Tuthill took possession, as heir at law, of the share of the real estate descended to him from his father, and received the rents, issues and profits thereof: that he became indebted to the complainant in the sum of six hundred dollars, for which he gave him his bond and a mortgage on the undivided two-ninth parts of three hundred and ninety-one acres, being part of the real estate formerly of Benjamin Tuthill, deceased: that he afterwards became indebted to the complainant in the further sum of one hundred and twenty-five dollars, for which he gave him another bond and also a mortgage on the undivided two-ninth parts of eighty-three acres of salt meadow, being also parcel of the real estate of said deceased. That the complainant, discovering that the premises were held by Tuthill subject to a power of sale given by the testator, and hearing that Nichol Smith was the acting executor and received and disbursed the money, he applied to the executors to know the particulars; and was informed by Tuthill that it was his intention the mortgage should cover the lands, not only, but the proceeds of the lands, and for further satisfaction he proposed to give complainant a draft on Nichol Smith, to which the complainant and Smith acceded; the draft was accordingly prepared, by which Tuthill directed Smith, his co-executor, to pay to the complainant or his order, out of the portion due or to become due to said Tuthill for the proceeds of the estate, the amount of the debts due from him to Herbert the complainant; which order was accepted by Nichol Smith in the following manner: "I accept the foregoing order, to be paid out of the funds above mentioned when I shall receive sufficient for that purpose." The bill further charges, that Smith, with the consent of the other executor, sold part of the real estate and received the proceeds; but refuses to pay any part to the complainant, alleging that he could not pay a part: that Tuthill af-

Oct. 1830.

Herbert
v.
Ex'r of Tut-
hill et al.

terwards became insolvent, and died, leaving Benjamin Tuthill his only child and heir at law : that Smith has lately sold to Catharine Wallace the residue of the mortgaged premises, for six thousand five hundred dollars, which he has received in part, and the residue is secured by bond and mortgage : that Smith has been again personally applied to for payment of the amount due on said acceptance : that he altogether declines. The bill prays, that the defendants may be decreed to account for the amount due the complainant : that the debt be declared a lien on the funds heretofore received by Smith, and upon the mortgage debt of Catharine Wallace, and be paid out of the proceeds of the share and interest of the said Wm. W. Tuthill in the real and personal estate of the testator, and that a sale of the mortgaged premises be made for that purpose.

The defendant, Smith, in his answer admits the two mortgages given by Tuthill to Herbert, the execution and acceptance of the draft or order ; but alleges that the acceptance was expressed in cautious terms, on the grounds, as understood by both parties, that William W. Tuthill was at that time indebted to the estate of the testator, or to the devisees, in a considerable sum of money, which he had received as one of the executors of the estate, out of the personal estate of said testator, and appropriated to his own use ; and which he had no other means of paying save the interest he had or might have in the estate. He admits the sale of a part of the estate as charged in the bill, and the receipt of the money ; but says that William's share was credited on the account due from him to the estate or the devisees. That he deemed himself authorized to take this course, both on the ground of his responsibility to the devisees, as well as the ground of a certain transfer executed by William to the defendant : this transfer is dated 3d September, 1817, and conveys to Smith all William's interest and share in the real and personal estate, for the purpose of securing to Smith and the devisees the sum of six hundred and thirty dollars, which Tuthill then acknowledges he had received of the estate and appropriated to his own use. The defendant admits, that, for these reasons, he did refuse to pay any money to complainant, and alleges that he has appropriated William's share to the liquidation of the debt due from him to the estate and the devisees, and denies that he has received enough to

· Oct. 1830.

Herbert
v.
Ex'r of Tu'.
hill et al.

pay it off. He admits the sale to Catharine Wallace, and the receipt of part of the purchase money ; and that there is now in his hands of the monies of the estate, received since the death of William, six hundred and eighty-nine dollars and seventy-six cents, which would have been William's share under the will, *had he been living*, and that on the receipt of the balance of the purchase money that amount will be increased. He has refused to pay over this, under the belief that on the death of William the share in the estate of his father descended to Benjamin Tuthill, the son and heir at law of William ; and under the farther belief that the draft or power of attorney, remaining unexecuted, ceased and became void on the death of William. But he is willing to pay over the money, as fast as he shall receive the same, to such persons as are rightfully entitled under the decree of the court.

*G. Wood*, for complainant. The testator, by his will, does not devise his real estate, but gives a power of sale to his executors ; in the mean time the land descended to his heirs. W. W. Tuthill took two-ninth parts as an heir at law, subject, under the power of sale, to be converted into cash, which he then takes in lieu of it. By the mortgages, W. W. Tuthill transfers *pro tanto*, and as security for the mortgage debts, his interest in the real estate, to the complainant. This transfer, in equity, would embrace the proceeds of the sale, when the land should be converted into money. The conversion does not change the character of the subject, and especially not for the purpose of defeating a fair transfer. When money is directed to be laid out in land, or land to be converted into money, it is considered in equity as already done : 2 *Mad. C.* 108. This land, at the time the mortgage was given, would be considered a personal fund, and the mortgage a pledge of personal property. The draft and acceptance of 10th February, 1817, though not a regular bill of exchange, had the effect to give the complainant a lien upon the funds in the hands of Smith, when received : 1 *Ves. sen.* 280. The alleged indebtedness of Tuthill to Smith or the estate, if true, could not defeat the right of the complainant. Smith acquired no right to the funds till the assignment by Tuthill to him of the 3d September, 1817, after the giving of the mortgages to complainant, and the acceptance by Smith of Tuthill's draft.

Oct. 1830.

Herbert
v.
Ex'r of Tut-
hill et al.

*J. S. Nevius,* for the defendants. The devise of the real estate to be sold prevented its descent to the heirs. The legal estate vested in the executors. W. W. Tuthill could not take possession as heir, and had no right to mortgage it. The mortgage to complainant is void. The will gives two-ninths of the estate to W. W. Tuthill, without any words of inheritance or perpetuity; he had only a life estate in the legacy, till the lands were sold and money paid to him; this did not happen during his life: he therefore could not pledge or transfer it. From the whole will it appears that the testator meant to provide for the issue of the legatees, not only in case they should die before him, but at any time before they received their legacies; and the intent must prevail: 4 *Kent's C.* 519, 521. The instrument given by W. W. Tuthill to the complainant, called an order on the executor, is in every sense a power of attorney. The acceptance of Smith was no more than an agreement to act under it, in an event that never happened. Tuthill in his life-time had power to revoke this authority, and he did revoke it by the transfer to Smith. His death at least was a revocation. Smith's acceptance did not vary it, for he did not in Tuthill's life-time receive funds to satisfy it. If the complainant's claim was good against the legacy, he should look to the personal representatives of Tuthill, not to Smith. If his claim was good against Smith, it could not extend beyond the amount actually received by him, after deducting the amount due from Tuthill to the estate. The will being so ambiguous as to render it proper the executor should take the opinion of the court in this case, the cost ought to be paid out of the fund in controversy: 4 *John. C. C.* 608.

THE CHANCELLOR. The first inquiry is, what interest did W. W. Tuthill take under the will of his father? Most clearly, a *vested* interest. The payment of the distributive share of William, and all the heirs, could not be made until after the land should be sold. But that does in no wise affect the vesting of the estate. The principle contended for by the defendant's counsel, that the right did not vest until the money was received, is unsound. There is a case to be found in 6 *Ves. jr.* 159, *Gaskil* v. *Harman,* in which the master of the rolls held that a residuary bequest vested only as the property was received; but that was

19

Oct. 1830.

Herbert
v.
Ex'r of Tut-
hill et al.

under very peculiar circumstances, not necessary to be explained, for the decree was afterwards set aside by Lord Eldon : *S. C.* 11 *Ves. jr.* 496. What estate had William in the share given him? The defendants contend it was a life estate only, and that the provision in the will against lapsed legacies is to be applied according to the intention of the testator ; not to lapsed legacies only according to their *technical* meaning, but to all the legacies in such way as to create a limitation over after the death of the legatees, whether before or after the death of the testator. And in support of this it is said there are no words of perpetuity or inheritance in the will. Such words are not necessary. The intention of the testator appears to me perfectly clear. He orders his executors to sell all the residue of his estate, real and personal, and gives certain shares of the proceeds to his daughters, and certain other shares to his sons. He provides that the legacies given to three of his daughters shall not be paid to their husbands, but the executors shall retain them and pay the interest to the daughters during the lives of their husbands, and on their death then to go to the daughters or their children. He then adds, "my will further is that neither of the above legacies shall lapse by the death of either of my said children, but in case of such death the share of such deceased child shall go to his or her issue, in manner and proportions aforesaid, two shares to boys and one share to girls ; and if such deceased child shall leave no issue, then his or her share shall go to and among my surviving children in the proportions aforesaid." This was a careful and just provision against the lapsing of any of these legacies. He had seven children, some of whom were married, and he might therefore reasonably expect that such provision would be necessary to insure to his descendants a proper proportion of his estate. I see nothing in the will to carry the intention of the testator beyond this. The legacy or share was given to William without any words of inheritance, it is true, but the whole interest or estate vests unless a contrary intention is clearly shown by the will.

Another inquiry is, whether the bond and mortgage given by Tuthill to the complainant on his two-ninths of the realty, or the order on Smith and the acceptance of it in the manner in which it was done, gave to the complainant any right or lien on the

Oct. 1830.

Herbert
v.
Ex'r of Tut-
hill et al.

share or the proceeds of it. There is no doubt, between the death of the testator and the sale of the land, the beneficial interest was in the heirs. William, in common with the others, was entitled to the rents and profits, and received them. And there is as little doubt that he had a right to make a disposition of his vested interest, if he thought proper so to do. How far the mortgage alone might have operated to secure to the mortgagee the property, or so much of it as was necessary to satisfy his claim, it is unnecessary to determine. The complainant rests not only on the mortgage, but on the special agreement entered into with Tuthill and Smith. The order drawn on Smith by Tuthill, in favor of Herbert, was not a bill of exchange, and could have no efficacy as a commercial instrument; but it was nevertheless perfectly competent for Tuthill to give such an order, and for Smith to agree to pay the money when he had funds. It was a direction to pay part of his money to Herbert for a past valuable consideration. It was his own property, and he was competent to transfer it, and actually did so. The money was fixed in the hands of Smith the moment the order was accepted and the undertaking complete : *Yates* v. *Groves*, 1 *Ves. jr.* 280.

The assignment by Tuthill to Smith of all his right in the estate, cannot affect the complainant's claim. It was made in September, 1817, which was long after the date of the mortgage, and the order on Smith, and the agreement by Smith to pay the money, and of consequence was subject to it as a prior vested right, which no subsequent transaction between Tuthill and Smith could defeat. The complainant then is entitled to recover the amount of his claim out of the fund, provided there be a sufficiency to satisfy it ; of which I understand there is no doubt. Let an account be taken, 1. Of the amount due the complainant for principal and interest: 2. Of the amount of assets received by William Tuthill before the order on Smith, and also the amount received by him since : 3. Of the amount received by Smith, and the money still outstanding, and what proportion of the same is still due on the share of Tuthill.

The question of costs, and all farther equity and directions, are reserved until the coming in of the master's report.