JOSEPHINE E. BROWN and SUSANNA G. PARKER and LOUIS
L., her husband,

*v.*

SAMUEL A. LIPPINCOTT and LEAH, his wife, HARRIET CHAP-
MAN and SARAH J. LIPPINCOTT.

1. Where there is a bequest to one person, and "in case of his death" to
another person, such and similar expressions, unexplained by the context, will
be held to mean death happening before the period of distribution or payment.

2. In the absence of anything in the will to otherwise fix a period of distri-
bution or payment, it will be considered to be the death of the testator, so that
the contingency will terminate if the first taker survives the testator. But
where the will plainly indicates that another time is intended for distribution,
that time, in pursuance of the cardinal rule that the testator's intention, ap-
parent upon the face of the will, is to govern its construction must be taken.

On bill for partition, answer and agreed state of facts.

John N. Lippincott, of the township of Little Egg Harbor,
in Burlington county, died in September, 1844, seized of a house
and lot. He left a will, without date, which was admitted to
probate on the 7th of October, 1884, by which he first directed
that his debts should be paid, and then gave the use of his house-
hold goods and furniture, indefinitely as to time, to his wife,
adding these words: " In addition of her dower right at common
law." The will then continued :

"I give and bequeath my house and lot to my beloved wife, Elizabeth Lip-
pincott aforesaid, and to my daughter Josephine Elizabeth Lippincott and my
son Samuel A. Lippincott and my son John N. Lippincott and my daughter
Susannah G. Lippincott, to occupy, use and enjoy for their mutual benefit, and,
in case of the death of my wife or either of my children, their share or in-
terest therein to descend to the surviving members of my family above named,
share and share alike."

He next gave his gun to his eldest son, Samuel, expressing the
wish that the son's grandfather should hold it in trust until the

son should arrive at a suitable age to use it.   The will then pro-
ceeded as follows :

> " I do further order and direct my executors, hereinafter named, to sell and
> dispose of my oyster lot and skiff to the best possible advantage for the use of
> my family.  And lastly, I do hereby appoint my loving wife, Elizabeth Lip-
> pincott, and my father, Joseph Lippincott, and my father-in-law, John Cramer;
> executors of this my last will and testament, and guardians of my children
> during their minority, and to rent one-half of the house and lot as long as
> they may think best for the purpose of supporting my family and paying my
> debts, so as to save the house and lot to my family for a home."

The testator's wife and his four children named survived him.
All four of the children lived with their mother until they,
respectively, married and went away from home.   Josephine,
the eldest child, married in 1850 ; Samuel, the second child, mar-
ried in December, 1861 ; John N., the third child, married in
September, 1860 ; Susanna, the youngest child, married in
August, 1863.   After her children left her the widow continued
to live in the house and lot mentioned in the will, her daughters
occasionally living with her, to afford her companionship.

The son John enlisted in the army during the war of the re-
bellion and died in Libby Prison in 1864.   He left surviving
him his wife, Harriet, who subsequently married one Chapman,
and a daughter, Sarah J., one of the answering defendants.   The
mother lived until February 12th, 1889.

The bill, which is filed for partition of the house and lot men-
tioned in the will, alleges that neither the wife nor child of John
have an interest in the property to be divided.

*Mr. Joseph H. Gaskill*, for the complainants.

*Mr. Mark R. Sooy*, for Samuel A. and Sarah J. Lippincott,
the answering defendants.

The Chancellor.

The question to be determined is, whether Sarah J. Lippincott
has an interest in the property of which partition is sought.   The
solution of the question depends upon the construction of the
will of her grandfather, John N. Lippincott, above stated, and

turns upon the meaning to be given to the clause, "and in case of the death of my wife or either of their children, their share or interest therein to descend" &c.

It is a well-settled rule of testamentary construction that where there is a bequest to one person, and "in case of his death" to another person, such and similar expressions unexplained by the context will be held to mean death happening before the period of distribution or payment. *Cowley* v. *Knapp, 13 Vr. 297; Burdge* v. *Walling, 18 Stew. Eq. 10.* The reason of this rule is that the expression "*in case of*" naturally imports a contingency which would not exist if the death contemplated is that of the first taker generally, for his death generally is certain to happen, and also because the law favors the speedy vesting of estates.

In the absence of anything in the will to otherwise fix a period of distribution or payment, the period will be considered to be the death of the testator, so that the contingency will terminate if the first taker survives the testator. But where the will plainly indicates that another time is intended for distribution, that time, in pursuance of the cardinal rule that the testator's intention, apparent upon the face of the will, is to govern its construction, must be taken.

Now, it is quite plain that when the testator here made his will, the purpose uppermost in his mind was to provide and maintain a home for his family while his children were of tender years. It is exhibited by the facts that he gave his house and lot to his wife and children "to use and enjoy for their mutual benefit," directed his oyster lot and skiff to be sold for the use of his wife and family and enjoined his executors to rent part of his house and lot to support his family and save the property for them as a home. That his young children were the special objects of his solicitude appears from the bequest of his gun to his oldest son, to be kept from him until he should reach a suitable age to use it, and the fact that he selected his wife and her father and his own father, the persons who would naturally be chiefly interested in the welfare of his children, as their guardians until they should reach their majority. To protect the home, he thus provided from the intrusion of strangers, possibly

through the marriage and death of a child or the remarriage of his wife before the home had answered its purpose, he made provision that if one or more of his devisees should die the surviving members of the family should take the share or shares of the person or persons dying.  It is to be noted, however, that the will contains no provision which looks to an ultimate survivorship among the wife and children, as it would if it were his intention to create a permanent joint tenancy.  The testator looked at the immediate, not at the remote, future.  He appreciated the value of a home for his children while they were young and their characters were being formed.  In bestowing contingent estates, he contemplated merely that which would aid the accomplishment of this immediate purpose, a home for his wife and children so long as mutual benefit might be derived from it.  That ultimate joint tenancy was not intended, I think very clearly appears—*first*, from the fact that such tenancy was not necessary to the accomplishment of the testator's scheme; *second*, that he did not provide for it directly by saying that when any one of the takers should die his or her share should go to the survivors, but adopted language which imports that the death contemplated was merely a contingent that might not happen— " *and in case of the death;* " *third*, the descent was not to be to the surviving member or members of the family, but to the " surviving *members*," in the plural alone, and to emphasize the use of the plural he added the words " share and share alike ;" and, *fourth*, the expression " share and share alike " defines exactly the shares that individuals should take, which was unnecessary if the holding was to be joint until only one survived.

It appears to me clear that, when the testator used the words " in case of death," he intended that they should relate to the time when the use and enjoyment of the home he had provided for his young family should cease to afford it " *mutual* " benefit. He had in mind that it should be maintained during the period which families usually keep together, at least during the minority of his children.  His purpose was answered, and the period of distribution came when the several members of his family were

provided with independent homes and became parts of other
families.

In August, 1863, all his children had married and left the
home.  Then the mutual use and enjoyment ceased and the time
for distribution had arrived.

I do not find anything in the will to indicate that the testator
had special intention with respect to his wife's occupany of his
house.  On the contrary, if his express provision in favor of
her dower is to have meaning, he contemplated a time when she
might have need to assert her claim to that estate, and thereby
indicated an intention that the home might not continue through-
out her entire life.

I am of opinion that the contingency contemplated by the tes-
tator, which should divest one of his family of his or her estate,
never happened.  John Lippincott died seized of an estate in
fee in one undivided fifth part of the property involved in this
suit.  His estate descended to his child and she took it, subject
to her mother's estate in dower.  Afterwards she took, by
descent from her grandmother, an undivided one-sixteenth part
of the same property.