The bill in this cause is filed to quiet the title to lands in Hudson county. The sole question presented is, What is the true construction of the second paragraph of the fourth item of the will of John C. Sandmann?
The testator died in 1882, leaving the will in question, dated April 21st, 1882. By the second item he gave to his wife a life estate in all of his property, to be cut down in case she remarried. The widow died in 1906. In the fourth item the testator, by numbered paragraphs, made disposition of all his property after the death of his wife. Under the second paragraph provision was made for his two daughters, Sophia H. Alberts and Ann Eliza Wunderlich. The second paragraph is as follows:
"Second. I give, bequeath and devise unto my two daughters namely Sophia Helena Sandmann, wife of Gustav Alberts and Anna Eliza Sandmann, wife of Emile Wunderlich both of the City, County and State of New York, my two houses and lots known as numbers twenty seven and twenty nine, on the west side of Cambridge Avenue, between Franklin and Hutton Streets, and also by houses and lots known as numbers two hundred and seventy and two hundred and seventy two Central Avenue with the rear houses thereon situate on the east side of Central Avenue between Franklin and Hutton Streets all in Jersey City, Hudson County, State of New Jersey to have and to hold the same jointly and receive the rents, interest, issues and profits thereof, and enjoy the same as their own and separate property during the term of their natural lives, together with the privilege of the right of way for water and sewer pipes leading from Central Avenue property through the lot known as number twenty seven Cambridge Avenue which privilege shall never be sold or cut off except by mutual consent between all parties interested, charging my said daughters Sophia Helena and Anna Eliza to keep the estate so devised to them free and clear of and from all encumbrances during *Page 137 
the term aforesaid, and from and after the death of my said daughters Sophia Helena and Anna Eliza, I give bequeath and devise the estate so given to them to their children then living share and share alike forever. But in case my said daughters Sophia Helena and Anna Eliza cannot agree in the division of the income of said estate so devised to them, then said estate to be sold by my Executors hereinafter named and the proceeds of such sale or sales to be invested share and share alike, in good security for the benefit of my said two daughters, Sophia Helena and Anna Eliza during the term of her natural lives, and after the death of my said daughter or daughters the sum so invested to belong to the child or children of such daughter forever."
At the foot of the third paragraph is the following:
"Provided however that should any of my said four daughters die intestate and without an issue, then it is my Will and I do order that the bequeaths so made by me to such intestate or issueless daughter or daughters, as the case may be, or the remainder of such bequeaths shall be equally divided between all of my grandchildren then living share and share alike."
Mrs. Wunderlich is living and has children. Her sister, Mrs. Alberts, died in the year 1889, leaving children. The complainant contends that, under this paragraph, the children of Mrs. Wunderlich and Mrs. Alberts took a vested remainder in fee as tenants in common. The defendants contend that the remainder, as to these children, was contingent, and that Mrs. Wunderlich and Mrs. Alberts took as joint tenants, so that, upon the death of Mrs. Alberts, Mrs. Wunderlich took as survivor for life, and, upon her death, the living children of Mrs. Wunderlich and Mrs. Alberts would take, share and share alike.
The devise over, after the decease of Mrs. Wunderlich and Mrs. Alberts, or either, clearly creates a contingent remainder. The testator not only said, "from and after the death of my daughters, I give, devise and bequeath," but the devise is to their children then living (i.e., at the time of the decease of their parents), which language is plain and unambiguous. The testator had four daughters; the other two received similar bequests but in separate paragraphs, and the same identical language as to the devolution of the estate after the death of each of these daughters is used in the two separate paragraphs above referred to, being Nos. 1 and 4. *Page 138 
In order to provide for the contingency which might arise if any of his daughters died without leaving children her surviving, he inserted the above proviso; that upon the death of any of his four daughters intestate and without issue, the share which such daughter had for life should be equally divided among all of his grandchildren, share and share alike. Taken from the plain purpose expressed by the testator in the will on this question, my view is that "die intestate" is meaningless, because all the daughter had was a life estate, and there was no power given under the will to appoint. And the words "without issue," in the light of this will, means children. These ambiguties plainly arose from the ignorance of the scrivener who drew the will, the effect of which will be dealt with hereafter.
The conclusion I have reached on this point is that this is a contingent remainder. Tantum v. Campbell (ChancellorWalker), 83 N.J. Eq. 361.
The next question to be considered is, Does paragraph 2 create a joint tenancy in Mrs. Alberts and Mrs. Wunderlich?
As above stated, this will was drawn by one unlearned in the law, and in construing this point regard must be had to the knowledge of the law possessed by the scrivener. It is apparent from the whole will that he had very slight knowledge of the law. He apparently knew some legal words and phrases, possibly gleaned from forms, but it is quite apparent that he was unfamiliar with the legal import of certain words used. Therefore, in construing these legal words and phrases, the whole scheme of the will should be examined into to determine whether they were used in the legal sense. Hewitt v. Green, 77 N.J. Eq. 345, 355;Burrwell v. Mandeville's Ex'r (1844), 2 How. 560; Hardacre
v. Nash, 5 T.R. 716; 101 Eng. Reprint 398; Hope, ex dem. Brown
v. Taylor, 1 Burr. 269; 97 Eng. Reprint 308; Aitken v. Sharp,93 N.J. Eq. 336, 346.
Counsel for complainant says that testator had a definite scheme for disposing of his estate. He gave to his son property worth $18,000 absolutely, and to each of his daughters property valued at $9,000, but, in the case of his daughters, *Page 139 
Mrs. Alberts and Mrs. Wunderlich, he gave to them property valued at $18,000, because a suitable division could not be made. In each paragraph devising to his daughters the same identical language is used, excepting where a change was necessary in devising to two instead of to one, and also excepting the provision for sale by the executor.
The language relied upon by the defendants in support of their contention is contained in the habendum clause, "To have and to hold the same jointly and receive the rents, interest, issues and profits thereof and enjoy the same as their own and separate property during the term of their natural lives," c. Eliminating the provision in this paragraph for the right of way for water and sewer purposes, which was peculiar to the premises devised, the only differences between the devise to the daughters separately and the two daughters are, the word "jointly" used in the estate devised, using words in the plural as applied to the devise over after death of the life tenants, and the clause providing for a sale by the executors in case his daughters could not agree upon a division of the income.
I am satisfied that the testator intended to place all of his daughters, as well as his grandchildren living at the date of the death of either daughter, on an equal footing. He did not intend that his children should have more than a life estate, and that their children should not take in remainder if they did not survive their parents. He did not think in terms of great-grandchidren, but provided that on the death of either daughter without living children all grandchildren then living should take, share and share alike, thus including children of his surviving daughters and son. The above proviso supplements the devise to his four daughters contained in paragraphs 1, 2 and 4, in all of which the testator stopped with the devise for life to his daughter or daughters, with remainder "to her child or children then living, share and share alike, forever," by extending the devise to all of his grandchildren living at the time of the death of any daughter, thus creating harmony in the disposition of the property devised to his four daughters for life. *Page 140 
Turning to the devises to the other two daughters, which are contained in separate paragraphs, there is little ambiguity. The difficulty that confronted the scrivener seems to have been that he was capable of drafting a clause of devise to one child clearly expressing the will of the testator, but when he was confronted with a devise to two he became involved and incapable of so phrasing the paragraph as to be unambiguous. His use of the word "jointly" was not intended to be employed in the legal sense of joint tenants, because it would be in opposition to the proviso which gives to all his grandchildren living at the time of his death of any daughter that which theretofore vested in her for life, and would be treating these two daughters differently from the other two. This the testator did not intend. The word "jointly" was used in the popular sense, viz., participated in or used by two or more; held or shared in common." Funk Wagnall'sDict., tit. "Joint."
My conclusion on this point is that the devise in the second paragraph created a tenancy in common between the two sisters.
Having determined that the two daughters took as tenants in common, and that the remainder over after the death of the two daughters is contingent, upon the death of Mrs. Alberts leaving children the remainder became vested, and they took and held under the will of their grandfather freed from any right of other grandchildren; and, therefore, the deeds from the children of Mrs. Alberts could pass the fee to Mrs. Wunderlich in this one-half.
As to the interest devised to Mrs. Wunderlich, the remainder over as to her children is still contingent, and it has not vested in anyone; and the period of vesting in this instance must await until the decease of Mrs. Wunderlich; then, if she dies leaving children, the estate will vest in them; if she dies without leaving children, the estate will vest in all of testator's grandchildren living at the time of her death. Therefore, the deeds given by Mrs. Wunderlich's children to her pass no estate at this time.
A decree will be advised in accordance with the foregoing views. *Page 141