GEORGE W. MARCH, complainant-appellant,

*v.*

NORRISTOWN PENN TRUST COMPANY et al., defendants-respondents.

[Decided January 26th, 1938.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Sooy, who filed the following opinion:

"Complainant, who is the son of Abraham H. March, who died testate on August 28th, 1923, seeks a construction of his father's will.

"The Norristown-Penn Trust Company, hereinafter referred to as the Trust Company, Laura F. March, testator's widow, and Paul March, another son of the testator, were named as trustees under the will aforesaid, and the Trust Company has answered, while a decree *pro confesso* has been taken as to Paul, Mrs. March having resigned as trustee. All other parties in interest have answered, the infant defendants being represented by a guardian *ad litem*, and the case is before this court on stipulations and briefs.

"The pertinent sections of the will are the seventh and the eighth items thereof, which read as follows:

" '7. I give to the Norristown Trust Company the further sum of Twenty-five Thousand ($25,000) Dollars to be held in trust for the benefit of my son Earl during his life, and after his decease the principal to fall into my residuary estate.

" '8. All the rest, residue and remainder of my estate I direct shall be divided into two equal shares for the benefit of my sons, George and Paul, respectively, but the share of my son George shall be held in trust by my Executors, and the survivor as Trustees, with authority to them in the event that he should marry and desire a home for himself, to invest a portion of the principal for the purchase of such a home. If at any time he shall have proved himself to the Trustees of my estate efficient and capable of safely and advantageously managing property, then I authorize my said Trustees, or the survivors, solely at their discretion, to pay over to him one-third of the property then held in trust for him, including any home that may have been purchased for him, and with the further discretion to my said Trustees, or the survivor, to pay over to him at the expiration of five years thereafter an additional third part of the property then held in trust for him, but the balance of his share of the residuary estate shall

remain in trust during his life, and after his decease the same shall be distributed to his children, or issue of deceased children, *per stirpes*, the trust to continue during the minority of any beneficiary. If he should leave no children or issue to take under this provision, then his share, or what may then remain, shall go to the increase of my son Paul and his children or issue.'

"It is stipulated that at the time of the execution of the will testator's family consisted of a second wife, Laura, and three sons by a former marriage. Paul was born in 1883, Earl in 1886 and George in 1896.

"Paul had, prior to the execution of the will, taken over his father's business and was operating it for himself. Earl was a business failure and addicted to drink. George was a college graduate and had started his business career as an employe and gave every evidence of success. He had no apparent bad habits and was then single. He married after his father's death and is the father of the four infant defendants.

"A short time after the testator's decease the trustees determined that George was 'capable of safely and advantageously managing' his estate, and in accord with paragraph 8 aforesaid, they paid over to him one-third of the trust property and five years thereafter an additional one-third thereof.

"Earl March is now deceased, so that the trust fund held by the trustees for Earl during his lifetime is now a part of the residuary estate under paragraph 7 aforesaid.

"George contends that under a proper construction of his father's will he is now entitled to receive outright from the trustees two-thirds of the increase to the residuary estate coming to it through the death of Earl.

"The Trust Company, trustee, and the guardian *ad litem*, representing the infant children of George, contend that this increased residue may not be paid to George but that his share must remain in trust during his lifetime, with the remainder over to his children or their issue, as provided in paragraph 8 of the will aforesaid.

"George has proved himself 'efficient and capable' of handling his estate, so that that question does not have to be determined.

"I fail to see how it may be said that there is any ambiguity in the provisions of the will with reference to the estate therein created for George, nor do I perceive any doubt as to the testator's intention as to the disposition to be made thereof.

"We start with the proposition that the purpose of construction, as applied to wills, is unquestionably to arrive, if possible, at the intention of the testator, but the intention to be sought for is not that which existed in the mind of the testator but that which is expressed in the language of the will, and further, that this court may not make a new will for the testator, nor will it surmise, guess, or speculate as to testator's intention, but will be guided by the expressed language of the will, where there is no ambiguity.

"Citations of authority for the above propositions are numerously quoted by counsel for all the parties in interest and the law is so well established that repetition of these citations is not necessary.

"It is quite evident, from a reading of the entire will, that the father was sure that Paul's character and habits were fixed and that he was thoroughly capable of taking care of his patrimony. He knew that Earl was not capable of so doing and while George had not manifested any evil tendencies, yet the father wanted to protect him and his future against the possibility thereof. He accordingly safeguarded George's estate, first, by appointing his step-mother and his brother as two of the trustees, and, secondly, by appointing an outsider, the Trust Company, as the other trustee, and he then vested a discretion in his trustees which he himself would have exercised had he lived until George had fully 'proved' himself.

"These trustees, in the exercise of their discretion, determined shortly after the father's death that the 'time' had arrived when George had 'proved' himself and in accordance with the terms of the will paid over to him 'one-third of the property then held in trust for him,' and at that time the residue had not been augmented by Earl's $25,000 trust estate, nor had it been nor has it yet been increased by the $30,000 trust fund in favor of Laura under the fifth paragraph of the will.

"Again, in accordance with the will, the trustees waited until the 'expiration of five years thereafter,' and paid over to George 'an additional third part of the property then held in trust for him,' and at this time the residuary estate had still not been augmented.

"Testator fixed two events upon the happening of which George was to be paid a portion of the property 'then' held in trust, first, when he had 'proved' himself, and second, 'at the expiration of five years thereafter,' and distinctly said that what the trustees should pay over to George on the happening of these events was one-third of 'the property then held in trust for him.'

"The testator knew that on Earl's death the residue would be augmented and so as to the death of his widow, and was evidently content that if this increase came to his residuary estate prior to the happening of either or both of the aforesaid events, i. e., George's proving himself and the period of five years thereafter, that George should have a one-third share of the residue thus increased, but he spoke of the estate 'then' in hand for payment, and when the final one-third was turned over to George, i. e., five years after he had proved himself, the testator knew that the residuary estate might have been, during this period, augmented through the death of either or both his wife and Earl, but if not, he distinctly provided that George should have the benefit only of the income for life and his children the remainder over. He did not provide for two payments of one-third each and then provide that if Earl or his wife died after the payment of the second one-third that George should be paid, in addition to what he had already received, two-thirds of the augmented corpus, but he did distinctly provide that the one-third of his residuary estate, whether increased or not after the payment of the other two-thirds to George, should be continued in trust.

"It is argued that testator declared that the residue of his estate should be divided into equal shares, the one for Paul and the other for George, and that for 'every whole share received by Paul,' George should be paid two-thirds of his

patrimony and one-third to be held in trust. This is not so. Testator did provide for equal shares for both of his sons, but he gave Paul his share outright and restricted the payment of George's share as hereinabove set forth.

"Testator having provided for payments to George at stated times and restricted the source from which those payments were to be made to 'property then held in trust,' distinctly said, 'but the balance of his share of the residuary estate shall remain in trust.' So that when the two payments having been made to George, Earl died, the $25,000 trust fund which Earl enjoyed during his lifetime augmented the balance of George's share of the residuary estate, which testator directed 'must remain in trust.'

"Any other construction would be contrary to the plain import of the language of the will and would require that the court add to the eighth clause of the will a provision that should the residuary estate be augmented from time to time after the payment to George of his two-thirds share at the time directed in the will, then in that event the trustees should pay to Paul his one-half of the additional residue outright and pay George in the same manner two-thirds thereof, leaving the remaining one-third in trust.

"A decree in accordance herewith will be advised, but in view of the fact that there is no present necessity for a ruling as to item 4 of the will, relating to the trust in favor of Laura F. March, the relief prayed for as to that item will be denied. *Matlock* v. *Matlock, 98 N. J. Eq. 572,* citing several cases."

*Mr. William Charlton,* for the appellant.

*Messrs. Moore & Butler* and *Mr. Allen B. Endicott, Jr.,* for the respondents.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons stated in the opinion of Vice-Chancellor Sooy in the court of chancery.

*For affirmance*—PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, WALKER, JJ. 13.

*For reversal*—None.