Complainants seek a construction of the last will and testament of Margaret A. Browning, deceased, who left her surviving six children, one of whom, Harry Browning, died about one month after the death of his mother, who died December 17th, 1929. Harry Browning left him surviving a widow and eight children, who are the complainants in this cause, the defendants being the five surviving sisters and brothers of the said Harry Browning.
The case is submitted on stipulation, from which the pertinent facts may be gathered and from which it appears that at the time of the decease of testatrix, she was seized of four lots of land on Madison avenue, two on Washington avenue, four on Thorofare avenue, three on Monmouth avenue, two on Jefferson avenue, as well as the "Neptune Club House" at Washington avenue and the beach, all in Margate City, New Jersey.
The personalty of testatrix consisted of a first mortgage on property in Pomona, New Jersey, in the sum of $3,000, a small checking account in the Chelsea National Bank of Atlantic City and a bond and mortgage of a building and loan association in Philadelphia, Pennsylvania, and six running shares of stock therein, of the par value of $200 each. It further appears that this stock would normally have matured in June of 1930, but that the association went into the hands of a receiver at some undisclosed time. It further appears that the Chelsea National Bank was closed by governmental action and that nothing has been realized from the bank deposit aforesaid. *Page 57 
I am assuming, in the absence of any stipulation to the contrary, that as of the date of testatrix' death in December of 1929, neither the building and loan association nor the bank aforesaid had gone into receivership and that testatrix assumed that the assets represented by these two institutions were at least of face value.
The will was evidently drawn by an unskilled hand and probably with the use of some form which had come to the hands of testatrix or such person as may have drawn her will for her.
The task before me is to ascertain testatrix' intention by reference to the language of the will, as set forth in March v.Norristown-Penn Trust Co., 123 N.J. Eq. 282; 197 Atl. Rep. 276,
and that the whole scheme of the will should be kept in mind, especially so since drawn by one unlearned in the law (Wunderlich v. Bleyle, 96 N.J. Eq. 135; 125 Atl. Rep. 386), and controlled by the dominant intention of testatrix (SecondNational Bank and Trust Company of Red Bank v. Borden, 113 N.J. Eq. 378; 167 Atl. Rep. 224), to give effect to all its provisions (Fink v. Harder, 111 N.J. Eq. 439;162 Atl. Rep. 614), and to put such a construction on apparently conflicting parts of the will that all of them, if possible, may stand and the whole will be carried into effect (Crocker v. Crocker,112 N.J. Eq. 203; 164 Atl. Rep. 9), and such a construction as will avoid intestacy, if it is possible so to construe it without doing violence to testatrix' intention or the plain language used by her in the making of her will.
The only portion of the will that is in dispute is the second clause thereof, which is, for the sake of convenience herein, numbered into nine sections, as follows: (The disputed clause is not numbered as to paragraphs in the will itself.)
"Second:
1. Alfred to receive Neptune Club house Washington Ave. and Beach
2. (Eleanor) the mortgage $3,000.00 I hold on Pomona property to ____ turned over to her also house and joining lot at the Cor of Jefferson Ave and Monmouth Ave to go to Eleanor
3. All my other property in my name to be shared by Eleanor as she see — best to do among all my six children George Harry Eleanor Grace Alfred and William *Page 58 
4. all rents from property are to be paid to Eleanor and used by her to pay expenses and settlement to ____ made one year after date of my death
5. Everything thing else of mine is Eleanor's all life insurance to — paid to Eleanor all things to be done as she so directs
6. I want you all to love and help one another and find no fault whatever and pray for me each morning and night Eleanor I want you to take care of Alfred's affairs and see to ____ no property sold without you signing no money drawn without you and. see to everything
7. The Bond and Mortgage B A S — shares to be paid over to Eleanor
8. If death should come to any of my children Geo Harry Grace Alfred or William before the settlement of my estate there share should go to Eleanor giving to his or her heirs $1,000.00
9. Eleanor must make a will so everything will be attended to right in case of her death."
I think it may be said without question that there is no difficulty with the first two paragraphs as above numbered and that the Neptune Club House at Washington avenue and the beach would have passed to Alfred under the first clause thereof had he not incapacitated himself by witnessing the will, and that the $3,000 mortgage on the Pomona property and the house and lot at the corner of Jefferson and Monmouth avenues passed to Eleanor.
The first difficulty arises with the proper construction of paragraph 3, as that paragraph is related to paragraphs 5 and 7. It will be noted that by paragraph 3 testatrix gives "all my other property in my name to be shared by Eleanor as she see best to do among all my six childern," naming them.
Paragraph 5 provides that "everything else of mine is Eleanor's all life Insurance to be paid to Eleanor," and paragraph 7 provides "the Bond and mortgage B A S — shares to be paid over to Eleanor." By these paragraphs testatrix endeavored to dispose of all of her property, both real and personal.
If paragraph 3 is to be construed as a residuary devise and bequest it is impossible to give effect to paragraphs 5 and 7 because if testatrix meant that all of her property, real, personal and mixed, should be "shared" by Eleanor among the six children she could not thereafter bequeath to Eleanor "everything else" including life insurance, as spoken of in the *Page 59 
fifth paragraph, nor could she bequeath the bond and mortgage and building and loan shares to Eleanor, as mentioned in paragraph 7.
If, however, paragraph 5 is construed to be a residuary bequest and paragraph 3 is not so construed, then all three paragraphs may be given effect, i.e., Eleanor would take as residuary legatee under paragraph 5 and would still take the bond and mortgage and building and loan shares under paragraph 7 and it would make no difference whether she received it in her capacity as residuary legatee or as a specific legacy under paragraph 7.
May paragraph 3 of the will be construed as limiting the gift or devise therein contained to real estate? If such a construction is put on that paragraph the testatrix will not die intestate as to her realty. If not, intestacy will result. I say this because Alfred, Grace and George, three of the children named in paragraph 3, are witnesses who actually signed as such at the time of the execution of the will and any bequest or devise to them is void. R.S. 1937, 3:2-8 and 3:2-9.
If paragraph 5 is construed as a residuary clause the void devises to the three children of testatrix would pass into the residuary but if not, she died intestate and title would pass to her heirs-at-law.
Any lapsed or void legacies or devises fall into the residuary but failure of any part of the residuary devise itself resultspro tanto in intestacy. Burnet's Ex'rs v. Burnet, 30 N.J. Eq. 595; Nagle v. Conard, 79 N.J. Eq. 124; 81 Atl. Rep. 841;affirmed, 80 N.J. Eq. 252; 87 Atl. Rep. 1119.
It is, of course, apparent that the testatrix intended these three children to take under the third clause of the will and it is also apparent that she did not intend to die intestate as to any of her property, but it is also true that in the drawing of her will she intended that if there should be any lapses of legacies or failure of devises or bequests that Eleanor should become possessed thereof, and by construing the fifth paragraph of the will as a residuary clause her purpose is accomplished.
Again, paragraph 4 of the will provides that all rents from the properties are to be paid to Eleanor and used by her to *Page 60 
pay expenses, with the provision that she settle within one year. If the shares of Alfred, Grace and George are void, and they are, the expenses spoken of in the fourth paragraph of her will would be paid out of the interest of the other three children and out of the lands received by Eleanor as residuary legatee.
That testatrix spoke of real estate in the third paragraph of her will seems further fortified by the fact that in connection with this gift or devise of "all my other property in my name" she immediately says: "all rents from property are to be paid to Eleanor," c. She refers, it seems to me, to the rents that might be derived from that property already the subject of her gift or devise in the preceding wording of her will, i.e., real estate. Nowhere in her will, when discussing personalty, does she say "in my name." She at this point (at the conclusion of the fourth paragraph) had disposed of all of her realty holdings and having done so, starts off with new paragraphs and disposes of her personalty.
My construction of the will, therefore, is that paragraph 3 is limited to real estate and does not include personal property and that when testatrix used the words "in my name" referring to her "other property" she meant those properties to which she had title by deed and that she intended to exclude her life insurance, bond and mortgage and building and loan shares bequeathed to Eleanor under paragraphs 5 and 7 of the will.
The next question is that raised by paragraph 8, in which she directs that the share of a child dying before the settling of her estate shall go to Eleanor provided Eleanor pay to the representatives of the deceased child the sum of $1,000. I think there may be no doubt that under this clause of the will the share of Harry goes to Eleanor upon payment by her to his representatives, the complainants, the sum of $1,000.
Counsel for complainants argues that Eleanor's share of the estate which she would take under the eighth clause, by reason of her brother's death, is charged with the sum of $1,000, with interest starting one year after the death of testatrix. I agree with this qualification, that there is no obligation on Eleanor's part to pay the $1,000 but that if she *Page 61 
desires to exercise the privilege of so doing, she may. If not, the share of Harry goes to the surviving children, the complainants.
I cannot agree with the construction of the will as placed upon it by the complainants, wherein they hold that paragraph 5 was merely intended to "confirm in Eleanor the possession and ownership of those mementoes of family accumulations which in all probability had been delivered in the lifetime of testatrix, and to avoid the all too frequent family squabbles in respect thereto," but do agree that testatrix, in paragraph 3, used the word "shared" as synonymous with "divided" — in other words, that the direction therein contained is that Eleanor divide testatrix' property among all her six children. It seems to me that the emphasis must be placed on the word "shared." The direction was to share or divide. The share or division was to be made by Eleanor "as she see best," i.e., the real estate was to be divided or shared. The manner of doing it was up to Eleanor, but her duty was, in all events, to divide without discrimination other than was necessary, the character of the devise considered. Testatrix did not want a family squabble and left the division to Eleanor to prevent one child insisting on that particular property she or he might want. Testatrix said — you take what Eleanor gives you, but she must divide.
That testatrix desired to have an equal division made by Eleanor is further demonstrated by the fact that in the eighth clause of her will she provided that if any child died before the settlement of her estate, Eleanor was to take the deceased child's share upon the payment of $1,000. If she had intended that the shares were to be divided unequally she would not have provided for the $1,000 payment, no matter what the share of the deceased child might be.
I further agree that the division should be equal as between the three children whose shares are not affected by their act as witnesses to the will. This, it would seem to me, would be the just, natural and reasonable method of division among the beneficiaries of the same degree.
69 Corp. Jur. 103 § 1152 e: *Page 62 
"Where the testator's intention, as expressed in his will, is ambiguous or obscure, such a construction should be adopted, if possible, as will dispose of his property in a just, natural or reasonable manner, and where the testator's intention is not clearly expressed, it is to be sought in a rational and consistent purpose, rather than in an irrational or inconsistent one."
See, also, Murphy v. Murphy, 118 N.J. Eq. 108;177 Atl. Rep. 682; affirmed, 119 N.J. Eq. 83; 180 Atl. Rep. 829, and Hersh
v. Rosensohn, 125 N.J. Eq. 1; 3 Atl. Rep. 2d 877, which are in conformity with the rule annunciated in 69 C.J. 235:
"It is the settled, general rule that, where bequests or devises are made to beneficiaries designated by name, they take as individuals rather than as a class in the absence of a contrary intention appearing elsewhere from the will,"
as well as in In re Cella, 108 N.J. Eq. 496; 155 Atl. Rep. 263;affirmed, 111 N.J. Eq. 356; 162 Atl. Rep. 589, wherein Vice-Chancellor Ingersoll held:
"A gift by will to persons by name indicates the testatrix' intention to give to them as individuals, and they take as tenants in common."
I have no trouble with that part of paragraph 4 of the will with respect to rents to be paid to Eleanor and hold that she takes these rents as trustee for a period of one year and is liable to account as such, and having held that paragraph 5 constitutes a valid residuary legacy, these expenses must be paid out of the three shares which go to the three children whose devises are valid and the balance of the three shares pass under the residuary clause and bear a proportionate part of the expenses.
It is argued that in view of events happening after the death of testatrix, which rendered her estate very small, makes it probable that paragraphs 5 and 7 of the will mean nothing. I think not, nor does the fact that the small amount of insurance left by the testatrix, which was payable to Eleanor as beneficiary, change my views.
A decree in accordance herewith should provide that the intended beneficiaries, Alfred, Grace and George, having *Page 63 
witnessed the will, take nothing thereunder; that Eleanor takes under paragraph 2; that Harry, Eleanor and William take each a one-sixth interest in decedent's real estate under paragraph 3; that the other three-sixth interest goes to Eleanor as residuary legatee and that Eleanor must account for the rents collected by her; the expenses to be charged in proportion to the undivided interests of the children as herein set forth; Eleanor takes all personalty under paragraphs 5 and 7; that complainants are entitled to take their deceased parent's share of the real estate unless paid $1,000, with interest, starting one year after the death of testatrix.
It is obvious that all assets of the estate coming into the possession of Eleanor were held by her in trust for the respective beneficiaries under the will and that she could not have disposed thereof by deed or otherwise, contrary to the rights of the respective parties, as herein determined. *Page 64