The complainants in their fiduciary capacities present for construction the last will and testament of one Mary Noel Stevens, deceased, and in particular they seek a declaration of their duties arising from article "Fifth" of the will.
The will, which appears to be in the handwriting of the testatrix, was executed by her on May 2d 1912, at which time she was seventy-one years of age. Those upon whom she would naturally bestow her estate were her two sons, Henry H. Stevens and William Carpender Stevens, and her daughter, Frances Noel Hall. Henry, then forty-two years of age, was married and Frances, thirty-eight years of age, was also married, but neither had issue at the time of the execution of the will. William, who was then forty years old, never married. It is acknowledged that "at the time the Last Will and Testament of Mary Noel Stevens was executed, there were facts which justified the testatrix in considering that William needed a special degree of care and protection in his financial affairs." His personality and habits of life are described in the stipulation of facts submitted at the hearing of this cause.
The testatrix died on October 9th, 1919. Henry, Frances, and William are all now deceased. William, who survived his brother and sister, died on December 30th, 1942. All died without leaving any issue.
It is the residuary clause of the will that has occasioned doubt and diversity of opinion. It is here transcribed:
"The rest and residue of my property I wish divided into three equal parts, paying to my son Henry and to my daughter Frances each one third. The remaining third I wish my executors to hold in trust for my son William, paying to him the income thereof, and directing and advising him how best to use or invest it. And in the event of either of my children dying without issue, his or her share to be divided among those remaining." *Page 331 
The testatrix nominated Henry and Frances as the executor and executrix of her will, who in consequence became the trustees of the trust created for William. Upon the death of Henry, his sister Frances became the surviving trustee. William died eleven days after the demise of Frances, whereupon the trust terminated. It is disclosed that the trust corpus was and now is comprised solely of personalty, and thus the complainants as the personal representatives of the last surviving trustee have properly assumed the duty of administering the trust estate. Gulick'sAdm'r v. Bruere, 42 N.J. Eq. 639; 9 Atl. Rep. 719; In reThurston, 104 N.J. Eq. 395; 145 Atl. Rep. 110.
The gifts of the shares of the residue to Henry and Frances were regarded as unqualified and absolute and were so distributed. No claims against the estates of Henry or Frances are implicated in this cause.
The problem confronting the complainants can be succinctly posed: Did William receive an absolute interest in the one-third portion of the residue which accordingly passes into his estate, or should that share now be distributed equally among the estates of Henry, Frances, and William, all of whom survived the testatrix, Mary Noel Stevens, and were at her death, her next of kin?
The briefs submitted by counsel are suggestive of the divergent courses of construction that might be pursued. All have been deliberately considered, but to provide a prompt decision, the present memorandum will be confined to the disclosure of the sense and meaning I have preferred to attribute to the will of this testatrix, omitting a discussion of the reasons that have induced me to reject the other proposed interpretations.
It is not difficult to rescue the last sentence of the residuary clause from perplexity. The testatrix wrote, "And in the event of either of my children dying without issue, his or her share to be divided among those remaining." (Italics mine.) Obviously, the word "either" was employed in the sense of "any." While such a use of the word "either" is at present regarded as ungrammatical and incorrect, yet its use and interpretation to import "any one (of more than two)" evidently continued to be acceptable until about the end of *Page 332 
the last century. 3 A New English Dict., Oxford; TheEncyclopaedic Dict. (1894); Writer's Guide and Index toEnglish, Perrin; Usage and Abusage, Partridge; Webster's NewInternational Dict. (2d ed., 1934). Vide, Herbert v. Ex'rof Tuthill, 1 N.J. Eq. 141, 146; Lafoy v. Campbell, 42 N.J. Eq. 34,37; 6 Atl. Rep. 300; reversed on other grounds, 43 N.J. Eq. 206; 10 Atl. Rep. 266. All doubt and uncertainty concerning that point is dissolved when it is recalled that the "children" were three in number, and that the phrase "among those remaining" indubitably is referable to those of her children who survive. In construing a will, courts may depart from its strict words and read a word or phrase in a sense different from that which is ordinarily attributed to it, when such departure is necessary to give effect to what appears, on a full view of the whole will, to have been the intention of the testator. Marshall's Ex'rs v.Hadley, 50 N.J. Eq. 547; 25 Atl. Rep. 325; Peer v. Jenkins,102 N.J. Eq. 235; 140 Atl. Rep. 413.
However, it seems conspicuous that the testatrix did not intend that her residuary bequests to Henry and Frances should remain, after her death, in a state of contingent suspense. Perceiving nothing in the will or in the surrounding circumstances persuasively evidential of a contrary intention, it is accordingly resolved that in making the residuary bequests in such a form, the testatrix intended that the words of contingency, "in the event of either of my children dying without issue," should be applied only to the occurrence of the event in her own lifetime. Barrell v. Barrell, 38 N.J. Eq. 60;affirmed, 39 N.J. Eq. 603; Burdge v. Walling, 45 N.J. Eq. 10;16 Atl. Rep. 51; Brown v. Lippincott, 49 N.J. Eq. 44;23 Atl. Rep. 497; Dranow v. Sherry, 80 N.J. Eq. 447; 85 Atl. Rep. 189;Steinhart v. Wolf, 95 N.J. Eq. 132; 122 Atl. Rep. 886; NewJersey Title, c., Co. v. Snyder, 103 N.J. Eq. 502;143 Atl. Rep. 725; Content v. Dalton, 121 N.J. Eq. 391;190 Atl. Rep. 328; affirmed, 122 N.J. Eq. 425; 194 Atl. Rep. 286; R.S. 3:2-17;N.J.S.A. 3:2-17.
Nonetheless, the essence and nature of the estate the testatrix desired to bestow upon her son William remains to be *Page 333 
determined. In this class of cases, precedents are useful servants but not masters. The aphorism that "no will has a twin brother" has become somewhat trite, yet its significance endures in the concept that testamentary intentions may well be as diversified as temperaments, family relationships, environments, interests, preferences, and prejudices. So, in each case, it is the intention of the testator or testatrix that constitutes the "life and soul" of the particular will. In construing a will, the court cannot, of course, play freely with conjectures and hunches. March v. Norristown Penn Trust Co., 123 N.J. Eq. 282;197 Atl. Rep. 276. Accordingly, in the present cause, the duty arises to detect the intention of Mary Noel Stevens, from a studious consideration of her entire will, in the light of the pertinent circumstances which in her case actually surrounded the composition of her will. Hewitt v. Green, 77 N.J. Eq. 345;77 Atl. Rep 25; Johnson v. Bowen, 85 N.J. Eq. 76;95 Atl. Rep. 370; Second National, c., Co. v. Borden, 113 N.J. Eq. 378;167 Atl. Rep. 224; Browning v. Browning, 126 N.J. Eq. 55;7 Atl. Rep. 2d 816; 2 Page on Wills, § 920.
It is in such a pursuit that the subservient rules of construction, generated by judgment and experience, afford some guidance. Some are serviceable in the solution of the present controversy.
The testatrix had three children. If her solicitude for William was greater, it is not apparent that her affection for him was less. Her will is replete with manifestations of her positive impartiality. She bequeathed the sum of $15,000 to each son, and devised her home, said to be of comparable value, to her daughter. She directed that her "furniture, books, pictures, china and glass," or the proceeds derived from their sale, be divided among the "three children." In still another bequest, she gave her "silver" to her children in equal shares. It is noticeable that in the gift of her personal "clothing" and "jewelry" to her daughter, the testatrix subjoined the request that her daughter "give to my two sons each one or more articles of the jewelry." Finally, in contemplating the disposition of the residue of her estate, she evinced an adherence to the same predominant inclination in *Page 334 
the words: "The rest and residue of my property I wish divided into three equal parts * * *." To this point in her will she has meticulously avoided any suspicion of discrimination among her three children.
Did the testatrix thereupon abandon her unmitigated policy and in disposing of her residuary estate resolve to cast William's gift in a different mold? If so, what was the true intrinsic character of the variation she intended? Figuratively expressed, I am convinced that the testatrix intended to place a full one-third share of the residuary estate into William's purse, but desired his brother and sister to hold the strings. The testatrix was not educated in the law, which is a circumstance to be recognized. Wunderlich v. Bleyle, 96 N.J. Eq. 135;125 Atl. Rep. 386; Browning v. Browning, supra; Brooks v. Goff,127 N.J. Eq. 115; 10 Atl. Rep. 2d 466.
The stipulation of facts represents that William was a man of intelligence and of good moral character. He preferred a simple uncommunicative life. He avoided business affairs and was never obliged to pursue any remunerative employment. He had customarily sought and received advice in financial matters from his bank and from the other members of the family. It was amid such considerations that the testatrix in her unskillful manner endeavored to assure a continuance of the supervisory assistance upon which William had habitually depended.
It is in that setting that the language of the testatrix as well as the conceivable omissions can reasonably be understood. She wrote: "The remaining third I wish my executors to hold in trust for my son William, paying to him the income thereof, and directing and advising him how best to use or invest it." Her mental prospect was that her executors would hold William's share for him, see that it was income-producing, pay him the income, and generally supervise his use of it. She envisioned and improvised a type of guardianship.
Observable also is the absence of any limitation of the payment of income to William and the omission of any gift over of the principal. If there is nothing in the will to *Page 335 
contravene, then certain established rules of construction may well attache to those characteristics. "The bequest of income without limit as to time, or gift over which can operate, is a bequest of principal, if there be no expression of a contrary intent. * * * The same rule applies whether the gift be direct or through the intervention of a trustee." Passman v. GuaranteeTrust and Safe Deposit Co., 57 N.J. Eq. 273; 41 Atl. Rep. 953.
In substantial concurrence are, Gulick v. Gulick's Executors,27 N.J. Eq. 498; Miers v. Persons, 92 N.J. Eq. 17;111 Atl. Rep. 638; Westfield Trust Co. v. Beekman, 97 N.J. Eq. 140;128 Atl. Rep. 791; affirmed, 99 N.J. Eq. 435; 131 Atl. Rep. 924;National Newark, c., Co. v. Arthur, c., Blind Babies,113 N.J. Eq. 313; 166 Atl. Rep. 635; Danker v. Cooper, 114 N.J. Eq. 283; 168 Atl. Rep. 640.
Indeed, where it is doubtful whether the use only or the absolute ownership was intended to be given, the rule has been accorded controlling effect. In re Olmstead, 226 N.Y.S. 637.
The insistence that the testatrix died intestate as to the ultimate disposition of William's share also encounters that presumption against an intestacy which attains even greater tenacity where the subject of the gift comprises the residuary estate. Carter v. Gray, 58 N.J. Eq. 411, 416;43 Atl. Rep. 711; Danker v. Cooper, supra; Bankers Trust Company of NewYork v. Greims, 115 N.J. Eq. 102, 114; 169 Atl. Rep. 655;affirmed, 117 N.J. Eq. 397; 176 Atl. Rep. 112; Parmentier v.Pennsylvania Company for Insurance, c., 122 N.J. Eq. 25;192 Atl. Rep. 62; affirmed, 124 N.J. Eq. 272; 1 Atl. Rep. 2d332.
It is my judgment that equality in the distribution of her residuary estate among her three children was the purpose, aim, and object of the testatrix. A decree will be advised in accordance with the conclusions expressed, with instructions to the complainants to distribute the corpus and accumulated income of William's share of the residue, less proper deductions, to the executors of his estate. *Page 336