ELVINA PEER et al., complainants-appellants,

v.

WILLIAM JENKINS et al., defendants-respondents.

[Submitted October 29th, 1927.   Decided February 6th, 1928.]

1. In construing a will, the object to be attained is to determine the intent of the testator as gathered from the whole document as applied to the testator's situation.

2. Courts, in construing a will, may depart from its strict words and read a word or phrase in a sense different from that which is ordinarily attributed to it, when such departure is necessary to give effect to what appears, on full view of the whole will, to have been the intention of the testator.

3. The same words in different parts of a will, used to express a common purpose, are presumed to have been used in the same sense.

4. In construing a will the predominent idea of the testator's mind, if apparent, is heeded as against all doubtful and conflicting provisions which might of themselves defeat it.

5. The testator left him surviving only his wife and an unmarried daughter.  By one paragraph of his will he gave to his wife one-third of "all the profits that are received for the use of my real estate as long as she remains my widow" and to his daughter "two-thirds of all the profits that are received for the use of my real estate, each paying one-half of the taxes, insurance and expenses of the same."  By the next and last paragraph he gave to his wife and daughter "the privilege of selling my real estate, or any part of it at any time, and my wife to receive one-third of the profits and my daughter Emily Jane VanDine two-thirds of the profits."  *Held*, that, by his will, the testator limited the estate of his widow in his realty to a life estate to be terminated by her re-marriage.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Bentley.

*Mr. James V. Beam* (*Mr. Harold A. Price,* of counsel), for the appellants.

*Mr. Jacob Van Der Clock,* for the respondents William Jenkins and Grace Jenkins.

*Mr. Frederic Beggs,* for the respondents Midvale-Wanaque Bus Company et al.

The opinion of the court was delivered by

TRENCHARD, J.

The bill in this case was filed for the partition of certain lands, situate partly in the borough of Wanaque and partly in the borough of Ringwood, in Passaic county.   The complainant, Elvina Peer, is the former wife of Peter VanDine, who died March 2d, 1911, seized of the property in question. Subsequent to his death his widow, the present complainant, married again, and her present husband, Eugene Peer, is joined as a party complainant.

The vice-chancellor dismissed the bill and the complainants appeal.

The defendants contended in the court below and contend here that the complainants have no interest in the lands described in the bill of complaint.   Whether or not this is so depends upon the true construction of the will of Peter Van-Dine.

By the first item of his will he directed the payment of his debts and funeral expenses.   Secondly, he gave to his wife, Elvina, "$800 in cash and right of dower of $200."   Thirdly, he gave to his daughter, Emily Jane VanDine, $1,500 and his household furniture.   Fourthly, he ordered all of his personal property, with certain exceptions, to be sold by the executor, and the proceeds of the sale to be equally divided between his wife and his daughter.   Fifthly, he directed that all the residue of his personal property should be equally divided between his wife and his daughter, and that, if they could not agree on the division, it should be made by the executor, Edward J. Brown.   Sixthly, he gave to his wife, Elvina, one-third of "all the profits that are received for the use of my real estate, as long as she remains my widow," and to his daughter, "two-thirds of all the profits that are received for the use of my real estate, each paying one-half of the taxes, insurance and expenses of the same."   By the next and last item of the will, he gave to his wife and daughter "the privilege of selling my real estate, or any part of it at any time, and my wife to receive one-third of the profits, and my daughter, Emily Jane VanDine, two-thirds of the profits."

After the testator's death his daughter married the defendant William Jenkins. She died February 21st, 1920, leaving a last will and testament, by which she gave her husband her whole estate, real and personal, whatsoever it might consist of, and appointed him executor.

The contention of the complainants is that, although by the will the widow was only entitled to one-third of the profits of the real estate so long as she remained his widow, she was, nevertheless, entitled to a fee of one-third of that estate by virtue of the will, because of the fact that there was no ultimate disposition made of it after she ceased to be the testator's widow.

We think this contention is without merit and that the bill was rightly dismissed.

The will of Peter VanDine was drawn by one unfamiliar with legal terms. In construing a will, the object to be attained is to determine the intent of the testator as gathered from the whole document as applied to the testator's situation. *Coffin* v. *Watson, 78 N. J. Eq. 307; affirmed, 79 N. J. Eq. 643.* The testator was survived by a widow and one child, who are the only persons provided for in the will. At the time of the making of the will, and at testator's death, this daughter, who survived him, was unmarried. We think that it was the intention of this testator to limit the estate of his widow in his realty to a life estate to be terminated by her remarriage. There is no indication that he intended to have his wife share in any portion of his real estate after she ceased to remain his widow. His provision that she should receive the profits arising from the use of the real estate as long as she remained his widow intimates that the *corpus* of the estate shall be reserved at least during that period, and that intimation negatives the idea that she became presently seized of a one-third share in his real estate at the time of his death.

It is argued that, by the last item of the will, giving to the wife and daughter the privilege of selling the real estate "at any time" and providing that his wife should receive one-third of the "profits," and the daughter two-thirds, in case of such sale, the testator intended that the purchase-

money arising from such sale should immediately thereafter be divided among the parties and thus indicated an intention that his wife should take the fee of one-third of the estate. We think this contention is unsound.

Courts, in construing a will, may depart from its strict words and read a word or phrase in a sense different from that which is ordinarily attributed to it, when such departure is necessary to give effect to what appears, on a full view of the whole will, to have been the intention of the testator. *Marshall* v. *Hadley, 50 N. J. Eq. 547.* So construed, we think the testator, by this last item of his will, intended that, in case his wife, while she remained his widow, and his daughter, should concur as to the advisability of selling the real estate, such sale could be made by them, and that the purchase-money should be substituted for the real estate itself and invested by the executor, or perhaps by the widow and daughter, and that the "profits" of *that investment* should be distributed. What the testator meant by the use of the word "profits" is apparent from the use thereof in the preceding item of the will; that is that the "profits received for the use of my real estate" should be divided between the widow and daughter. The general rule is that the same words in different parts of a will, used to express a common purpose, are presumed to have been used in the same sense. *Traverso* v. *Traverso, 99 N. J. Eq. 514.* Accordingly, the word "profits," used in the last item of the will, should be interpreted to mean income, the meaning given it in the preceding item. In construing a will the predominant idea of the testator's mind, if apparent, is heeded as against all doubtful and conflicting provisions which might of themselves defeat it. *Johnson* v. *Haldane, 95 N. J. Eq. 404.* Respecting his wife, the predominant idea of the testator, as gathered from the will, was to provide income for her so long as she remained his widow. If we use the word "income" instead of "profits" in the paragraph providing for sale, there is no difficulty in ascertaining the intention of the testator, but for the use of the words "at any time." But it seems unreasonable to suppose that the testator intended that this power should exist after the widow's interest had ceased. It is more

reasonable to interpret this clause as being effective only during widowhood, during which time she retained her interest. If, as we think, the word "profits," in the last item of the will, meant "income," the testator must have meant that the power of sale be limited to widowhood. He undoubtedly realized that a sale might be necessary or desirable, and that, if a sale was made, it would create a new status. He knew that the proceeds could be invested and bring profits or income. If the widow remarried there could be no reason for her exercising the power, as her interest was ended. His daughter was his only child, and it is proper to assume that the testator knew that in the event of his widow's remarriage his daughter would take the fee.

Since the complainant Elvina Peer has no interest in the property, she could not legally bring this suit to have the property partitioned.

The decree below will be affirmed, with costs.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, MINTURN, KALISCH, BLACK, KATZENBACH, CAMPBELL, LLOYD, WHITE, VAN BUSKIRK, MCGLENNON, KAYS, HETFIELD, DEAR, JJ. 15.

*For reversal*—None.