Complainants, Laurence C. Murphy and Charles L. Gaskill, Jr., two of the legatees named in the will of John Henry Murphy probated by the surrogate of Essex county August 30th, 1933, bring their bill and pray for construction of the second paragraph contained in the will which reads as follows:
"Second: I hereby give and bequeath my printing business and the machinery and plant and stock in trade, good will and fixtures in the following manner, that is to say: A one-half interest in the same to my son, Henry A.F. Murphy, a one-quarter interest in the same to Charles L. Gaskill and the remaining one-quarter interest to Laurence C. Murphy, to them, their executors, administrators and assigns forever."
Complainants allege that under this bequest they are each entitled to a one-quarter interest in the cash on deposit in the checking account of said business which they say was maintained in the Union National Bank at Newark, and also in the bills receivable.
The defendants, Mary E. Murphy, individually and as executrix, and the son, Henry A.F. Murphy, contend that the money on deposit in the Union National Bank to the credit of the deceased, and the accounts receivable, are no part of the business, and that complainants are not entitled thereto under the will; that there was no business checking *Page 110 
account; that said account in the Union National Bank was the personal account of the deceased and that complainants are entitled only to a one-quarter interest each in the business, machinery and stock in trade, as well as the good will and fixtures.
The testator maintained a bank account in the Union National Bank at Newark in the name of "H. Murphy," in which there was a balance to his credit at the time of his death amounting to $13,526.44. The checks used in withdrawing money from this account bore on their face the printed words, "H. Murphy, Printer." There are also accounts receivable and accounts payable in connection with the printing business.
The business disposed of by the will is one of long standing. At the time of the execution of the will, Henry A.F. Murphy, son of the testator, was a minor with little or no experience in the business, while complainants were men of much experience and long association with the deceased. Laurence C. Murphy, at the time of the testator's death, had been office manager for ten years past and associated with the business for twenty-six years. Charles L. Gaskill, Jr., was the general supervisor and employed in the business for thirty-four years. The deceased did an extensive printing business in the conduct of which he sought and received the counsel and advice of complainants, the value of which the deceased in his lifetime attested by the fact that he semi-annually paid to each of them, in addition to their salary, a sum which he represented as a one-quarter share of the profits of the business.
The deceased maintained altogether six checking accounts and fifteen savings accounts, the total on deposit in all of which amounted to approximately $90,000. Analysis of the checks drawn on the account in the Union National Bank shows that in the year 1931 the deceased drew for his personal use one hundred and seventy-eight checks amounting to $25,853.57, and seven hundred and sixteen checks, which were used distinctly for business purposes, totaling $60,594.08; in the year 1932, he drew one hundred and thirty-two checks for *Page 111 
personal use, totaling $20,808.55, as against six hundred and fifty-two checks exclusively for business purposes totaling $48,850.87, and in the year in which he died, 1933, up to August 9th, he drew seventy checks amounting to $5,277.83 for personal use and three hundred and seventy-two checks, totaling $34,374.91, traceable to business purposes. This analysis was made by Israel M. Pogash, who in reply to the question how he knew which checks on this account were drawn for the personal use of the deceased said, "a check to Mrs. Murphy would ordinarily be a personal check, it wouldn't be a business check. A check for taxes for his home is a personal check, that is not a business check. I mean, many of them can be identified by that means."
The total estate of the deceased amounted to about $300,000. He was described by Philip H. Baldwin, publisher, business and advertising manager of the Newark Sunday Call, who knew him since 1898, "as one of the keenest business men he ever ran across." The profits from the business and the size of his estate corroborate the accuracy of the judgment formed by Mr. Baldwin concerning decedent's business ability. Certainly, such a man maintained a business account with an average balance as working capital. Moreover, outstanding in aid of the determination that the account "H. Murphy, Printer," was considered by the deceased as his business account is the fact that the complainant, Laurence C. Murphy, who was the office manager, was intrusted with power of attorney to draw checks on this account.
The testimony further shows that neither of complainants were men possessed of means or capital wherewith to carry on this successful business. Certainly, the testator did not intend after his death that the machinery, stock in trade, fixtures and good will of the business should be divided between complainants and his son or sold and the proceeds divided one-half to his son and one-quarter each to complainants. Such a result it is not reasonable to presume was either intended or desired by the testator. He knew that the business could not be carried on without capital. What he intended was that the business be carried on by complainants *Page 112 
and his son in the same way in which it was conducted by him in his lifetime, substituting his son in his place and stead, and complainants as partners in fact with the son.
The facts and surrounding circumstances which existed at the time of the decedent's death, lead me to the inescapable conclusion that it was the intention of the deceased that the money in the Union National Bank and the accounts receivable (the working capital) should go to the complainants and the defendant son, together with the business, less the accounts payable.
In a situation not unlike the present, In re Lowe (SupremeCourt, Appellate Division), 134 N.Y. Supp. 537, Judge Spring, reversing the surrogate in construing a bequest of "her printing office and bindery, together with all presses, bindery machinery, type, paper on hand, office furniture and equipment of every nature connected with said business," held that: "This successful business, it is fair to assume she intended to transmit as a family heritage to her only child, to be carried on in her behalf without impairment of its efficiency or volume. To strip it of its bills receivable and the small amount of cash to its credit would destroy its working capital, and leave nothing connected with the business from which money could de derived to meet the weekly payroll of $1,200 or over. It is unreasonable to believe that this mother designed to deprive her daughter of the fruits of this family patrimony so essential for its management and operation. We should not interpret the will in such a way as to make a serious invasion on the live assets of the business, unless the language of the bequest clearly calls for that construction. The only available assets were grouped in these due and accruing accounts and the small sum in cash. If the daughter was to carry on the business without these assets she must add a considerable sum in cash to it and practically commence anew without any working capital." Affirmed by the court of appeals,206 N.Y. 671; 99 N.E. Rep. 722, modifying the opinion to the extent only that the daughter was to pay the bills payable of the business.
The meaning and intention of the testator must be determined, *Page 113 
not by fixing the attention on single words in the will but by considering the entire will and the surroundings of the testator when he executed the will, and by ascribing to him, so far as his language permits, the common impulses of our nature. Torrey v.Torrey, 70 N.J. Law 672.
In Coyle v. Donaldson, 91 N.J. Eq. 138, the bill of complaint was filed to obtain, among other things, the construction of the words or phrases in the fourteenth clause of the will, "the coal business now owned by me," bequeathed to the testator's grandson, James W. Coyle, Jr., and his daughter, Elizabeth C. Donaldson. The vice-chancellor before whom the case in the first instance was heard, decided the words included only the good will of the business, the leasehold interest of the land on which the coal business was conducted, the horses, wagons and other equipment used by the testator in carrying on the business of coal merchant. Our court of errors and appeals in reversing the vice-chancellor held that the words in the will included in addition thereto coal on hand, cash and checks, cash on deposit in the checking account of the business and the difference between bills receivable and payable. The court, among other things, said:
"If we put ourselves in the position of the testator, at the time of the execution of the will, and consider the circumstances he had in view in making the will, it seems quite clear, that the coal business was to pass, as it was then owned by the testator, as a whole, with all that pertained to it, as a going concern or business. Neither one of these two legatees had any means whatever, except what they received under the provisions of the will, and no one, perhaps, knew better than the testator himself that such a business could not be carried on successfully without some capital."
Considering the language of the provision in the will, the testator first bequeaths "my printing business" in what is a broad bequest, to which he adds "and the machinery and plant and stock in trade, good will and fixtures." These are not words of restriction, but specify some of the chief tangible property in the plant. He bequeaths his printing business, together with the good will. He intended not to cut down *Page 114 
the bequest but to make clear that in addition to the business in its entirely, these principal items, physically in the plant, should unmistakably pass with the business. The intention of the testator in this, as in every other case of like nature, must be drawn from the language used in the will, viewed in the light which the situation and surroundings connected with the property may shed upon it. Charles E. Francis, Ex'r, c., v. ElizabethBreivogel et al. (Docket 101, page 562 — unreported).
Decree will be advised in accordance with the foregoing conclusions.