One Mary Jameson Scarborough, a resident of Somerset County, New Jersey, died testate on September 17th, 1938. Her last will and testament executed on February 20th, 1938, was admitted to probate on September 30th, 1938, whereupon letters testamentary were issued to her husband, Hiram Edwin Scarborough, and to her brother Howard Leon Jameson, whom the testatrix had nominated to serve as executors of her estate. Hiram Edwin Scarborough, one of the executors, died on December 28th, 1940, and upon appropriate application the complainant, Fidelity-Philadelphia Trust Company, was on February 28th, 1941, appointed by the Somerset County Orphans Court to execute and administer the testamentary trust created by the testatrix.
The article of the will from which some divergent interpretations have now evolved reads as follows:
"Eighth: I give and bequeath to my beloved husband Hiram Edwin Scarborough, the possession and use of all and singular; the real estate and personal property including all household effects held by me, during his natural life; except such articles, as mentioned by me in prior or subsequent clauses.
"The same, to then revert to each of my brothers, Howard Leon Jameson and Earle Carleton Jameson, in shares equally alike, or in event of the demise of either, their share to surviving children of issue. *Page 387 
"My intent is, that the interest only and not the principal of my estate shall be used.
"The principal shall be held for the children of issue of my two brothers.
"My executors, in view of the foregoing are not restricted from selling or re-investing the funds of my estate, as need shall arise or such re-investment or sale as shall be for the best interests, of my estate."
The life tenant first named, Hiram Edwin Scarborough, received the income derived from the corpus of the trust until his death. The complainant continued the administration of the trust for the benefit of Howard Leon Jameson and Earle Carleton Jameson, the life tenants secondly named, to whom the income was paid in equal shares. On July 1st, 1942, Howard Leon Jameson, a resident of Philadelphia, Pennsylvania, died testate and, significantly, without issue. His widow is the sole legatee in his will. The other life tenant, Earle Carleton Jameson, is married and has five living children, three of whom, Earle, Jr., Robert, and Donald, are unmarried. A son Edward is married and has one infant daughter; another, Howard Keith Jameson, is also married and he has three sons.
It is amid such circumstances that some incertitude has arisen concerning the proper distribution of the corpus and accumulating income of the trust established for the life tenant, Howard Leon Jameson, who, as previously stated, is now deceased. The complainant presents the will of the testatrix for construction and desires a declaration of its duties in the particular mentioned.
Before undertaking to construe the will, it will not be inappropriate to allude to some features of this cause that have incidentally attracted my attention. Normally stipulations and admissions of fact which are adverse and disadvantageous to the interests of infant defendants are not authoritative in regard to the determination of the rights of such infants. Anderson v.Anderson, 133 N.J. Eq. 311; 32 Atl. Rep. 2d 83. Nor is the practical construction of the will adopted and pursued by the adult parties peremptory as to infants. Accordingly, I pause to remark that the extraneous evidence presented by the stipulations will be considered only in so far as it is in all respects competent and admissible. *Page 388 
Another observation may well be mentioned. While the aid of an informative decree declaring in whom the remainder of the trust created for the living life tenant might ordinarily be said to be premature, yet here it has eventuated that the interest of Howard, one of the life tenants of the income of one-half of the residue held by the trustee, has terminated, and the trustee incurs a present duty to determine the destination of thecorpus heretofore reserved for the benefit of the life tenant now deceased.
To supply this will with a true and practicable construction is like "helping a lame dog over a stile." Home-made wills often expose the propensity of a scrivener unlearned in the law to borrow words and phrases having a distinct legal import and significance which the writer neither contemplated nor definitely understood. This will is apparently in the handwriting of the testatrix and introduces such an example. Lying at the root of the present task is the endeavor to ascertain the meaning the testatrix attached to her phrase "children of issue." Her testamentary intention is of course a factor of supreme importance and if legally possible, it must be respected and effectuated. The cardinal and the subservient rules in aid of the construction of wills have been recently stated in Barrett v.Barrett, 134 N.J. Eq. 138; 34 Atl. Rep. 2d 579, andBottomley v. Bottomley, 134 N.J. Eq. 279; 35 Atl. Rep. 2d475. A reiteration of them here is needless.
It will be both expedient and serviceable to outline the course of reasoning I have followed in quest of the genuine intention of the testatrix. Testators, in utilizing words as symbols, do not always transmit their ideas with orthological precision. A will may have a polished or a vulgar surface, and yet beneath it the testamentary intent is discernible.
Beginning with a cautious and studious examination of the eighth article of the will, it is at once obvious that the testatrix resolved to bestow the income to be derived from the residue of her estate upon her husband "during his natural life." She wished "the same to then revert." The words "the same" only embrace in their import the life interest of the husband in the residue. The word "then" means upon the death of the husband, and the word "revert" was intended *Page 389 
to carry the signification of the word "divert." Her two brothers were therefore to receive the income, and only the income, from the residue "in shares equally alike" after the death of the husband. Such an interpretation is abundantly elucidated by the ensuing sentence: "My intent is, that the interest only and not the principal of my estate shall be used."
Courts may read a word or phrase in a sense different from that ordinarily attributed it, when such departure is necessary to give effect to the conspicuous intention of the testatrix.Marshall's Ex'rs v. Hadley, 50 N.J. Eq. 547; 25 Atl. Rep. 325;Peer v. Jenkins, 102 N.J. Eq. 235; 140 Atl. Rep. 413; Duane v.Stevens, 137 N.J. Eq. 329.
Resuming the inspection of the article of the will, it is noticed that the testatrix has directed that "in the event of the demise of either" of her brothers, "their share to surviving children of issue." In the absence of any disclosure of a contrary intent, it might be assumed that the words of contingency were to be applied only to the occurrence of the event in the lifetime of the testatrix or primary life tenant.Cf. Barrell v. Barrell, 38 N.J. Eq. 60; affirmed, 39 N.J. Eq. 603; Burdge v. Walling, 45 N.J. Eq. 10; 16 Atl. Rep. 51; Duane
v. Stevens, supra. Other than its bearing on the intention of the testatrix in other particulars, the eventualities have removed that specific point from the field of conflict. Howard has died without any issue. Hence he has no surviving children or issue of them to receive the one-half portion of the income. I am inclined to believe that the "share" to which the testatrix referred was not a division of the principal but the one-half portion of the income relinquished by the brother upon his death, and that his "share" was thereupon to be transferred to his "surviving children of issue." I am unable to reconcile a different construction with her final direction that "the principal shall be held for the children of issue of my two
brothers." (Italics mine.) Could she have intended the phrase "their share to surviving children of issue" to mean that in such event the grandchildren of the brother who survived him should then have "their share" of the corpus, and yet an equal share of the income derived from the entire corpus continue to be payable to her living brother? *Page 390 
Moreover, it is hardly judicious to infer that the testatrix intended to direct her trustees to distribute (upon the death of one brother) one-half of the corpus in equal shares among a class incapable of precise identification until the death of her other brother. To increase the share of Earle and pay all income to him is unwarranted by any permissible construction of the will.
It is insinuated that it may now be determined that the testatrix died intestate in respect of the one-half portion of the accruing income. I think not. The eighth article of the will with which in this particular we are concerned clearly exhibits the intention of the testatrix to dispose of her whole estate. In such a circumstance the presumption against intestacy is cogent. Although in the course of the actual events the will does not contain any specific direction at present applicable to the accumulation of income, nevertheless in conformity with the plain intent of the testatrix to dispose of her entire estate, such income falls into the residuary estate and will ultimately be distributable as a part of the corpus. Bye v. Strasbourg,102 N.J. Eq. 300; 140 Atl. Rep. 273. Such income, however, should be segregated in that it is not to be permitted to enhance the portion of the corpus from which Earle receives his bequest.
The trustee can neither dissolve nor repudiate the definitely declared instruction of the testatrix that the "principal" shall be "held." For whom? The testatrix has answered: "for the children of issue of my two brothers." (Italics mine.)
The more enigmatical question remains to be solved. What designative meaning did the testatrix herself impute to the phrase "children of issue?" Noticeably, the testatrix has twice employed that phrase in her will. Unless a contrary intention is apparent, it is reasonable to assume that the testatrix used the phrase in each instance in the same sense. Traverso v.Traverso, 99 N.J. Eq. 514; 133 Atl. Rep. 705; affirmed, 101 N.J. Eq. 308; 137 Atl. Rep. 919; Peer v. Jenkins, supra. It is, of course, elementary that where the testamentary intention is revealed by definitely expressive and unequivocal terms, there is no occasion for construction. It is equally fundamental that the intention of the testatrix *Page 391 
is to be harvested from a circumspect reading of the entire will, and the true intention when thus recognized transcends any inapt and incompatible phraseology. Dennis v. Dennis, 86 N.J. Eq. 423; 99 Atl. Rep. 889. The word "issue" has in the law a typical and somewhat esoteric meaning. In re Fisler, 133 N.J. Eq. 421;30 Atl. Rep. 2d 894.
In the transmission of her bounty, did the testatrix intend by the use of the phrase "children of issue of my two brothers" to overpass a generation of descendants? My conception of her purpose has a broader prospect than the strictly literal interpretation of the words she happened to choose.
In scrutinizing language of a will, the light of the circumstances attending its use will sometimes blend the divers shades of its meaning into one coloring. So here.
I am informed by the stipulations of fact that the testatrix duly executed a prior will on November 21st, 1921. I regard it to be admissible for a limited use and purpose. It is noticeably the pattern adopted for the will of 1938. While the prior will cannot supply the intention of the testatrix in the composition of her will of 1938, it may however be considered as a circumstance in aid of the ascertainment of that intention. Ennis v. Smith, 14Howard (U.S.) 400; Dwight v. Fancher, 216 N.Y.S. 652;affirmed, 245 N.Y. 71; 156 N.E. Rep. 186; reargument denied,245 N.Y. 565; 157 N.E. Rep. 859; In re Miner's Will, 146 N.Y. 121; 40 N.E. Rep. 788. Such evidence is not utilized to disclose what the testatrix meant to say, but simply to aid in a revelation of what she meant by what she did say. German PioneerVerein v. Meyer, 70 N.J. Eq. 192; 63 Atl. Rep. 835; affirmed,72 N.J. Eq. 954; 67 Atl. Rep. 23.
And so I discover that the eighth article of the will to be construed is in its language identical with that of the ninth article of the prior will of 1921. In the will of 1921 the testatrix twice used the same designation "children of issue" modified in the former instance as here by the adjective "surviving." At that time Howard had no children, and the only children in being of her two brothers were the three sons of Earle, who were then respectively nine, eight, and five years of age. *Page 392 
If I retrace the path of my reasoning, it does not seem rational to suppose that the testatrix at that time intended that the share of the income of either brother who might die should pass to such children as might be born of remotely expectant marriages of his infant sons, and then only to those who should be born in the lifetime of their grandfather and survive him. The nephews of the testatrix seem from an observance of other parts of the will always to have been the natural objects of her bounty, and I am unable to perceive any clear inclination of the testatrix to exclude them from the eventual enjoyment of the residue of her estate in favor of grandnephews and grandnieces whose future existence must have been beyond the horizon of her foresight at the time she made the earlier will. At the time of the execution of her last will in 1938, only one grandnephew had been born, and the testatrix had not as yet seen him.
I am conducted to the conclusion that in making use of the phrase "children of issue" she intended to denominate the children of her brothers, and that the words "of issue" were added as a characterization connoting the natural issue of and from the brothers or the issue of such parentage, as distinguished from adopted or stepchildren. To exemplify, let me paraphrase a quotation from the Bible and have the testatrix say to her brothers "thy sons that shall issue from thee, which thou shalt beget" shall inherit the residue of my estate. 2 Kings 20,18.
Therefore, the distribution of the principal or corpus of the trust must await the demise of the surviving life tenant, Earle Carleton Jameson. A gift to a class is a gift of an aggregate sum to a body of persons uncertain in number at the time of the gift, to be ascertained at a future time, who are all to take in equal or some other definite proportions, the share of each being dependent for its amount upon the actual number. Clark v.Morehous, 74 N.J. Eq. 658; 70 Atl. Rep. 307. More definite and expansive instructions concerning the ultimate distribution of the corpus would be at this time premature. Children as yet unborn might possibly enter the class of beneficiaries. Cf.Moore v. Moore, 137 N.J. Eq. 314. *Page 393 
The trustee is instructed (a) to retain the principal orcorpus of the trust until the demise of the life tenant, Earle Carleton Jameson; (b) to continue to pay one-half of the income derived from the corpus to Earle Carleton Jameson during his natural life; and (c) to collect and retain the other one-half of the income and all increment thereof to the end that it may eventually fall into and become a part of the corpus when the time arrives for the distribution of the corpus.
If so desired, the bill will be held to enable the complainant to apply for additional instructions if future eventualities require. *Page 394