19 N.J. Super. 365 (1952)
88 A.2d 351
PAUL FRANK POLLIAK AND JULIA POLLIAK FETZER, INDIVIDUALLY AND AS EXECUTORS UNDER THE WILL OF MARIA POLLIAK, DECEASED, PLAINTIFFS,
v.
ANDREW SMITH, MICHAEL SMITH, JOSEPH SMITH, JOHN SMUTNAK AND MARJE SVORNOVA RO SMUTNAK, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided April 30, 1952.
*367 Mr. James M. Barry, attorney for plaintiffs.
Messrs. Morris, Downing & Sherred (Mr. Willis H. Sherred appearing), attorneys for defendants Andrew Smith, Michael Smith and Joseph Smith.
STEIN, J.S.C.
Maria Polliak died on September 12, 1950, leaving a will which was duly probated by the Surrogate's Court of Sussex County on September 25, 1950, in and by which she appointed plaintiffs, Paul Frank Polliak and Julia Polliak Fetzer, to be the executors thereof.
Her will, inter alia, provides as follows:
"SECOND: I give, devise and bequeath unto my beloved husband, Andro Polliak, if I predecease him, my real estate consisting of what is known as the Obadiah Bunn Farm and described in deed dated March 11, 1927, in which said deed Isaiah Bunn and wife convey said farm to my said husband and me, which said deed was recorded in the Sussex County Clerk's Office in Book 296 of Deeds at page 34, and which farm, by subsequent deeds was transferred to me individually, to have, hold, receive, use and enjoy the rents, interest, issues and profits thereof during the term of his natural life, together with the farm machinery and equipment consisting of all of the farm machinery and equipment thereon to have, hold, receive, use and enjoy the rents, interest, issues and profits thereof during the term of his natural life; and from and after his decease, I give and devise said farm to my children PAUL FRANK POLLIAK and JULIA POLLIAK, absolutely and forever, to have and to hold to them, their heirs and assigns, forever, in equal shares as tenants in common, share and share alike; and from and after the decease of my said husband, I give and bequeath all the machinery and equipment on said farm to my said son, PAUL FRANK POLLIAK, to him absolutely and forever.
THIRD: Of my money on deposit in the Hardyston National Bank of Hamburg, New Jersey, I give and bequeath to my son Andrew Smith the sum of Four Hundred ($400.00) Dollars; of said money I give and bequeath to my son Michael Smith the sum of Four Hundred ($400.00) Dollars; of said money I give and bequeath to my son Joseph Smith the sum of Four Hundred ($400.00) Dollars.
FOURTH: In the event that my said husband predecease me, then and in that event I give and devise said farm to my children PAUL FRANK POLLIAK and JULIA POLLIAK, absolutely and forever, to have and to hold to them, their heirs and assigns forever, in equal shares as tenants in common, share and share alike. In the event that my said husband predecease me, then and in that event I *368 give and bequeath all of said farm machinery and equipment on said farm to my said son PAUL FRANK POLLIAK, to him absolutely and forever."
Testatrix and her husband for a number of years prior to their respective deaths operated a dairy farm in Sussex County. The farm consisted of approximately 125 acres of land. It contained a dwelling house, cow barn and the usual farm outbuildings together with the necessary farm machinery and implements. A herd of approximately 40 or 50 cows was always maintained for the production of milk. It was customary to replace non-productive cows with fresh stock and to raise young stock for the purpose of such replacement. Part of the farm acreage was used to grow hay and ensilage used as feed for the herd. The milk produced was sold to various creameries.
Testratix' husband, Andrew Polliak, managed the farm until his death which occurred on February 26, 1949. From and after his death the farm was managed by testatrix' son, Paul F. Polliak, one of plaintiffs herein who, together with his sister, Julia Polliak Fetzer the other plaintiff, lived with their parents on the farm. She assisted her mother with the household duties.
At the time of testatrix' death there was on deposit to her credit in the Hardyston National Bank of Hamburg, the sum of $885.82.
In addition to the plaintiffs, testatrix was survived by five other children by a former husband named Smutnak. Three of these children later changed their surnames to Smith. All of said children are parties defendant herein.
Plaintiffs are in doubt as to whether under the last sentence of the fourth paragraph of the will such articles of personal property as the livestock, hay, household furniture and other personalty used as an adjunct to the operation of the farm passes to Paul Frank Polliak, and whether the bequests in the third paragraph are specific legacies and abate proportionately or are general legacies to be paid in full from the general estate, wherefore they bring this complaint seeking construction *369 of testatrix' will and instructions as to their duties thereunder.
It is the general rule in this State that the intention of the testator controls the construction of wills, First Nat. Bank of Toms River v. Levy, 123 N.J. Eq. 21, 195 A. 820 (Ch. 1938); Crocker v. Crocker, 112 N.J. Eq. 203, 164 A. 9 (Ch. 1933); Holbrook v. Greene, 125 N.J. Eq. 337, 5 A.2d 730 (Ch. 1939); that the will must be read from its four corners and the intent of the testator gathered from the whole document. Murphy v. Murphy, 118 N.J. Eq. 108, 177 A. 682 (Ch. 1935), affirmed 119 N.J. Eq. 83, 180 A. 829 (E. & A. 1935); Schaefer v. Gessler, 121 N.J. Eq. 42, 188 A. 439 (Ch. 1936); Van Nest v. Van Nest, 126 N.J. Eq. 234, 8 A.2d 558 (E. & A. 1939).
The inquiry therefore resolves itself into the question: what did testatrix mean by her use of the word "equipment" in the last sentence of the fourth paragraph? If she meant all personalty including live stock, hay and household goods, then such articles passed to Paul Frank Polliak under the fourth paragraph of the will. If such was not her intention, then she died intestate as to such personalty because of the lack of a residuary clause in her will.
A testator is always presumed to have intended to dispose of his entire estate and if such intent can be found in the expressed provisions of the will the court, if possible, will so construe it. The law abhors intestacy and it is the duty of the court to construe the will if possible so that it will pass all that the testator possessed. Barrett v. Barrett, 134 N.J. Eq. 138, 34 A.2d 579 (Ch. 1943).
Funk & Wagnalls' New Standard Dictionary of the English Language (1937) defines "equipment" as the act or process of equipping with all needful supplies for any special service; "equip" is defined: to provide with all that is necessary for a successful undertaking. In Eastern Penn. Power Co. v. State Bd., &c., 100 N.J.L. 255, 126 A. 216 (Sup. Ct. 1924), our former Supreme Court defined equipment as: "Equipment means that which is needful, that *370 which is necessary." In the operation of a dairy farm for the production of milk, cows and hay are not only needful and necessary but are indispensable.
Another well-settled rule in this State is that the intention of the testatrix will prevail over technical rules and words in their technical or even ordinary meaning. Greenleaf v. Plainfield Trust Co., 122 N.J. Eq. 500, 195 A. 303 (Ch. 1937); Holbrook v. Greene, supra.
In the second paragraph of her will testatrix gave to her husband a life estate in her farm "together with the farm machinery and equipment consisting of all of the farm machinery and equipment thereon to have, hold, receive, use and enjoy the rents, interest, issues and profits thereof * * *." This language leaves no doubt that testatrix meant that if her husband survived her he was to enjoy during his lifetime the farm and everything contained thereon in the same condition as it was when she died.
Her failure to mention each item by name does not mean that she did not intend to include such items. Her language is all embracing and admits of no exclusions. In this paragraph, in which she gave the remainder to her son Paul, testatrix used practically the same language as that in which she gave a life estate to her husband. In the fourth paragraph the testatrix says "I give and bequeath all of said farm machinery and equipment on said farm to my said son * * *." (Italics mine.) The use of the word said by testatrix indicates that she was referring to the same machinery and equipment in which she gave her husband a life interest. The general rule is that the same words in different parts of a will, used to express a common purpose, are presumed to have been used in the same sense. Traverso v. Traverso, 99 N.J. Eq. 514, 133 A. 705 (Ch. 1926), affirmed 101 N.J. Eq. 308, 137 A. 919 (E. & A. 1927); Peer v. Jenkins, 102 N.J. Eq. 235, 140 A. 413 (E. & A. 1927). It is my conclusion that testatrix by the last sentence of the fourth paragraph of her will intended that all personalty contained on the farm should pass to her son Paul.
*371 The bequests in the third paragraph of the will are specific bequests. A specific bequest is a gift by will of a specific article or a particular part of the testator's estate, which is identified and distinguished from all others of the same nature, and which can be satisfied only by the delivery and receipt of the particular thing given. In re Low, 103 N.J. Eq. 435, 143 A. 222 (Prerog. 1928); Sanborn v. Sanborn, 14 N.J. Misc. 260, 184 A. 400 (Ch. 1936); Zorner v. Foth, 124 N.J. Eq. 508, 2 A.2d 666 (Ch. 1938), affirmed 127 N.J. Eq. 269, 12 A.2d 837 (E. & A. 1940). The facts in the last cited case are very similar to the facts here. In that case the will provided in a number of paragraphs for bequests of various sums of money. Immediately following these paragraphs the will provided: "All the aforementioned bequests to be paid * * * out of an existing bank account held in my name in the Rutherford National Bank * * *." The amount on deposit in the bank at the time of testatrix' death was less than the aggregate of the bequests and in fact the personal estate was insufficient to pay the bequests in full. The legatees made application to the court for the sale of sufficient real estate to make up the balance of the bequests to them. It was there held that the bequests were specific bequests and that the direction in the will that the bequests be paid out of a certain specified bank account was intended as a limitation of the fund out of which payment of the bequests were to be made, and that the legatees were not entitled to the relief sought. The holding in that case is dispositive of the question raised here.
Judgment accordingly.