GRACE LOUISE HILL and HENRY J. RUSSELL, executors under the last will and testament of Thomas Hill, deceased,

*v.*

ERNEST PERRY HILL et al.

[Decided April 13th, 1922.]

1. The right of a devisee to exoneration by payment of a debt secured by mortgage upon the land from the personal assets of the estate exists in full force except in so far as it has been abolished by statute.

2. *3 Comp. Stat. p. 3421* § *2,* does not abolish the substantial right of a devisee of land to exoneration by payment of the bond secured by mortgage on the land devised to him from the personal property of the testator.

3. While a statute relating to remedy and procedure is to be liberally construed with a view to the effective administration of justice, it must be strictly construed in so far as it changes or diminishes fundamental rights, both as to the cases embraced in its terms and the methods to be pursued.

4. The legislature makes public policy, not the courts.

On bill, &c.

*Mr. James E. Pyle,* for the complainants.

*Mr. William R. Gannon,* for the defendants Ernest Perry Hill and Arthur Edward Hill.

*Mr. Philip S. Birnbaum,* for the defendants Grace Louise Hill, trustee, &c., and Maria Louise Hill and Thomas Howard Hill.

LEWIS, V. C.

This litigation was initiated by a bill filed by the complainants as executors of the estate of Thomas Hill, deceased, for instructions regarding the payment of a bond made by the testator during his lifetime to the Provident Institution for Savings in Jersey City for $10,000 to secure which he gave a mortgage upon the property on Newark avenue, in Jersey City, devised by him in his will to Grace Louise Hill, as trustee.

As appears from the agreed state of facts all the allegations in the bill are admitted by the defendants Ernest Perry Hill and Arthur Edward Hill, and the complainants, as executors, admit the order limiting creditors and the decree barring creditors in the matter of the estate of Thomas Hill mentioned in the answer of the defendants Ernest Perry Hill and Arthur Edward Hill. No claim under oath has been filed with the executors of the said estate by the Provident Institution for Savings in Jersey City, the mortgagee mentioned in the mortgage covering the lands above referred to, and by no one else for the payment of the amount due on the bond and mortgage mentioned in the bill of complaint, but that verbal demand was made before April 3d, 1920, upon the executors by the devisees of the real estate covered by said mortgage, that said executors pay said bond and mortgage out of the personal estate of the said decedent and thereby exonerate the real estate from the lien of the said bond and mortgage.

It is admitted that the executors have waived the necessity of the said devisee presenting the said claim under oath, and the

question as to the legal right to so waive was not argued before me, although it is set up as one of the defences by the defendants Ernest Perry Hill and Arthur Edward Hill in their answers.

It may be said in passing that it has been held that an executor may pay any claim against the estate, which he is satisfied is just, without requiring a statement of the items, or that it be sworn to. *Kinnan* v. *Wight, 39 N. J. Eq. 501.* It was also held, in *Heisler* v. *Sharp, 44 N. J. Eq. 167,* that an executor or administrator may pay the debt which is just, though it be barred by the statute of limitations, and in *Boynton* v. *Sandford, 28 N. J. Eq. 184,* that where an action is brought against him on a claim barred by the statute of limitations an executor is not bound to plead the statute.

The interesting and important question. however, which I am asked to pass upon is, Does the doctrine of exoneration exist to-day in New Jersey, or has it been abolished by the statute of 1880, in the absence of any express intention to exonerate, as evidenced by the will?

The right to such exoneration was well settled in England and in New Jersey, and, unquestionably, exists to-day in New Jersey in full force, unless it has been abolished in the case of mortgage debts of the ancestor, or devisor, which are. represented by the bonds of such ancestor or devisor which come within the operation of the act of March 12th, 1880. *3 Comp. Stat. p. 3420.* The old authorities, laying down the original rule above referred to, may be found cited in *Park. Dig. col. 5540 p. 192; Smith* v. *Wilson, 79 N. J. Eq.* (at *p. 312*).

Of course, all cases laying down or following the ancient rule which precedes the statute of March 12th, 1880, have an application to the present inquiry, which is confined to the question whether the statute of 1880 abolished the right of exoneration in cases coming within the operation of the statute.

We may go further and say that cases which came up in court and were decided after the act of 1880 can have little, if any, bearing upon the question under examination, if, as a matter of fact, the bond and mortgage of the ancestor or devisor was in existence prior to the time when the act of 1880 became a law.

It may be that the constitutional provision prohibiting the legislature from passing any law depriving a party of any remedy for enforcing a contract which existed when the contract was made preserves the right of exoneration to the heir or devisee if the bond of the ancestor or devisor was in existence when the act of 1880 took effect. It is settled in this state that the act of 1880 could not prevent the holder of a bond and mortgage in existence when the act took effect from availing himself of the remedy which he had when the bond was given, by a suit at law before any foreclosure was attempted.

As it is settled, therefore, that the holder of the bond and mortgage was unaffected by the subsequently passed statute of 1880, it may be argued with force that the right of exoneration in such case is preserved for the benefit of the heir or devisee.

The cases which bear upon the question under consideration are:

(1) *Kreuger* v. *Ferry* (*Vice-Chancellor Van Fleet, 1886*), *41 N. J. Eq. 432, 437;* affirmed on opinion below, *43 N. J. Eq. 295.* Vice-Chancellor Van Fleet lays down the old rule that the personal estate of decedent is the primary fund for the payment of his debts and that the heir, devisee or widow has a right to exonerate his land in any mortgage existing thereon for which the decedent was personally liable. Vice-Chancellor Van Fleet further held that the right belongs to the three classes of persons mentioned and that an alienee or mortgagee of an heir or devisee has no such right. No notice whatever is taken of the possible effect of the act of 1880. The old rule was affirmed, or rather referred to as in full force. The case, however, has little bearing upon our inquiry for two reasons—

*First.* The point decided was that the alienee or mortgagee of the heir or devisee would not receive by assignment or otherwise his grantor's or mortgagor's right to exoneration.

*Second.* As a matter of fact, the bond and mortgage with which the vice-chancellor had to deal was made by the testator in 1860, twenty years before the new law went into effect. In recognizing the old rule of exoneration as in existence in New Jersey, Vice-Chancellor Van Fleet refers (at *p. 437*) only to

one New Jersey case, *Keene* v. *Munn, 16 N. J. Eq. 398,* a case decided in 1863, seventeen years before the statute with which we are dealing was enacted by the State of New Jersey.

(2) *Bird* v. *Hawkins (Vice-Chancellor Grey, 1899), 58 N. J. Eq. 229.* Vice-Chancellor Grey recognizes the old rule of exoneration (at *p. 254*). The only New Jersey case cited to sustain the rule is *Whitehead* v. *Gibbons, 10 N. J. Eq. 236,* which case was decided in 1854, twenty-six years before the statute of 1880 was passed.

(3) *Higbie* v. *Morris (Court of Errors and Appeals, 1895), 53 N. J. Eq. 173.* This decision of our court of last resort lays down the old rule of exoneration and holds that the right of exoneration of land mortgaged by the decedent exists and is payable out of personal property as a primary fund.

It may be noted that the will under examination in this *Higbie Case* was dated November 10th, 1888, eight years after the statute in question was passed. The opinion of the court of errors and appeals (at *p. 176*) states that the mortgage in question existed when the testatrix made her will and when she died, and that such mortgages secured the "personal bond of the testatrix."

(4) *Smith* v. *Wilson (Vice-Chancellor Stevenson, 1911), 79 N. J. Eq. 310.* This case came squarely under the old law of exoneration. The mortgage debt, in respect of which the heirs-at-law claimed exoneration, consisted in a bond of the testatrix secured by a mortgage made by the testatrix in 1903. The common law rule of exoneration in such a case was recognized and the authorities cited (at *p. 312*). Vice-Chancellor Stevenson decided that the right of exoneration in a case like this coming within the class of debts described in the statute of 1880 had been abolished by that statute and that the heirs took title *cum onere.* Neither *Kreuger* v. *Ferry, Bird* v. *Hawkins,* nor *Higbie* v. *Morris,* above referred to, was cited. The old New Jersey cases laying down exoneration rule which were decided prior to 1880 were cited.

(5) *Atkinson* v. *Atkinson (Vice-Chancellor Backes, 1914), 84 N. J. Eq. 104.* This was a suit by an heir to secure exonera-

tion. Vice-Chancellor Backes, in a brief opinion, followed *Smith* v. *Wilson, supra,* citing no other cases.

(6) Chancellor Walker, when vice-chancellor, in *Hetzel* v. *Hetzel* (*1908*), *74 N. J. Eq. 770,* in a suit involving the construction of a will, held that devisees were entitled to have a mortgage made by their testator paid out of his personal estate in exoneration of the lands, but not as to lands subject to mortgages which were upon them at the time of their acquisition by the testator, which he assumed. This was a reiteration and an application of the common law rule of exoneration by the vice-chancellor eighteen years after the passage of the act of 1880, and without any reference being made to that act. One of the mortgages in this case was made after the passage of the act.

The vice-chancellor, in deciding the case of *Smith* v. *Wilson,* did not refer to the case of *Higbie* v. *Morris* nor *Hetzel* v. *Hetzel.*

Therefore, it appears that the only reasoned adjudication in this state that the statute of 1880 abolished the exoneration rule was that of Vice-Chancellor Stevenson in *Smith* v. *Wilson, supra;* for Vice-Chancellor Backes in *Atkinson* v. *Atkinson, supra,* only adopted and applied *Smith* v. *Wilson* as a precedent.

I am constrained to dissent from the adjudications in these two cases (*Smith* v. *Wilson* and *Atkinson* v. *Atkinson*) and from the reasoning of Vice-Chancellor Stevenson in *Smith* v. *Wilson.*

The pertinent provision of the statute of 1880 is section 2, which was amended in 1881 (*Comp. Stat. p. 3421*), which reads as follows:

"That in all cases where a bond and mortgage has or may be hereafter given for the same debt, all proceedings to collect said debt shall be, first, to foreclose the mortgage, and if at the sale of the mortgaged premises under said foreclosure proceedings the said premises should not sell for a sum sufficient to satisfy said debt, interest and costs, then and in such case it shall be lawful to proceed on the bond for the deficiency, and that all suits on said bond shall be commenced within six months from the date of the sale of said mortgaged premises, and judgment shall be rendered and execution issue only for the balance of debt and costs of suit."

The learned vice-chancellor, in *Smith* v. *Wilson,* says (at *p. 315*) that the act of 1880, and its supplements, have abolished the right of the heir or devisee to be exonerated from a mortgage, created and owned by the ancestor or testator out of his personal estate; that in such cases the statute expressly makes the mortgage the primary fund out of which the debt secured thereby is to be paid, and permits the personal remedy on the bond only after the remedy against the land has been exhausted. Here is no expressed legislative intention to abolish the common law rule of exoneration, and, if the statute has that effect, it must be so held by construction. This statute, it will be observed, relates solely to remedy and procedure, and while such statutes are to be liberally construed with a view to the effective administration of justice, nevertheless, such as take away, change or diminish fundamental rights must be strictly construed both as to the cases embraced within their terms, and as to the methods to be pursued. *36 Cyc. 1188,* citing *Crowder* v. *Fletcher, 80 Ala. 219.* And in *2 Lew. Suth. Stat. Const. 454,* it is laid down that it is not to be presumed that the legislature intended to make any innovation upon the common law further than the necessity of the case required; that a statute that a mortgagee shall not be entitled to the possession of the mortgaged property until after foreclosure, does not affect his right to the appointment of a receiver as before the passage of the act (citing *Lowell* v. *Doe, 44 Minn. 144*).

The supreme court in *Tinsman* v. *Belvidere-Delaware Railroad Co., 26 N. J. Law 148* (at *p. 167*), observed that statutes in derogation of common law rights are to be strictly construed, and we are not to infer legislative intent to alter the common law principles further than is clearly expressed, or that the case absolutely requires. See, also, *State* v. *Norton, 23 N. J. Law 33, 40, 41; Hetfield* v. *Central Railroad Co., 29 N. J. Law 571, 573; Sinnickson* v. *Johnson, 17 N. J. Law 129; 34 Am. Dec. 184.*

Furthermore, the supreme court in *Knight* v. *Cape May Sand Co., 82 N. J. Law 16,* expressly held that this very act "which provides 'that in all cases where a bond and mortgage have or may be hereafter given for the same debt, and proceedings to

collect the debt shall be first to foreclose the mortgage,' being in derogation of the common law force inherent in the bond must be construed strictly." And the court of errors and appeals, although reversing this case, expressly affirmed the supreme court, holding that this statute should be strictly construed, observing that it was at the oppressive proceedings of foreclosing a mortgage and suing on the bond at the same time that the statute was aimed. *S. C., 83 N. J. Law 597* (at *p. 601*).

The vice-chancellor, in *Smith* v. *Wilson,* goes on to observe (at *p. 315*) that the rule of exoneration accords with the policy of the English law which protected the heir and had tender regard for landed estates by which families were sustained and family succession was promoted; but in modern times, and especially in America, land occupies a very different position from that which it occupied under the old English system; that men buy lands and put mortgages upon them, sell their equities, and oftentimes deal with the lands which they have mortgaged as the primary fund out of which payment of the debt is to be made; that great fortunes which perpetuate families are perhaps handed down more frequently in the form of personal property than in the form of land; that in 1829 the State of New York abolished the right of the heir or devisee to exoneration in a statute which provides that whenever any real estate, subject to a mortgage executed by any ancestor or testator, shall descend to an heir or pass to a devisee, such heir or devisee shall satisfy and discharge such mortgage out of his own property, unless there be an express direction in the will of such testator that such mortgage be otherwise paid, and he states that the English parliament in 1854 passed a statute similar in effect but much broader, providing that where a person dies seized of land charged with any money by way of mortgage, the heir or devisee shall not be entitled to have the mortgage discharged out of the personal estate or any other real estate of the ancestor or testator, but that such land so received by him shall be primarily liable, unless the testator or intestate by his will, deed or other document has signified any contrary or other intention. These statutes disclose a change of public policy in England and in the State of New York; and the legislature makes public policy, not the courts.

*Earle* v. *American Sugar Refining Co., 74 N. J. Eq. 751* (at *p. 762*), and cases cited.

If our legislature had intended by the act of 1880 to have abolished the exoneration rule, how easy it would have been for it to have accomplished the purpose by using proper and apt words to express its meaning in that regard, as the legislature of New York did by providing in terms that the heir or devisee should satisfy and discharge the mortgage out of his own property, unless there be an express direction to the contrary, and, as the English parliament did by providing in terms that the heir or devisee should not be entitled to have the mortgage discharged out of the personal or other real estate of the ancestor or testator unless a contrary intention had been expressed.

The title of the act is "An act concerning proceedings on bonds and mortgages given for the same indebtedness and the foreclosure and sale of the mortgaged premises thereunder." *P. L. 1880 p. 255.*

In *Toffey* v. *Atcheson, 42 N. J. Eq. 182,* Vice-Chancellor Van Fleet, in construing the first section of the act of 1880 (at *p. 184*), said that all this statute attempts to do is to prescribe a new rule of practice.

These acts of 1880 and 1881 have been held to be unconstitutional, but only so far as attempted to be applied to mortgages made prior to their passage. *Champion* v. *Hinkle, 45 N. J. Eq. 162, 165,* and cases cited.

As the views above expressed do not accord with the reasoning of Vice-Chancellor Stevenson, and are not in harmony with *Smith* v. *Wilson* and *Atkinson* v. *Atkinson, supra,* I consulted the chancellor as to the soundness of this opinion and the propriety of promulgating it, and he authorizes me to say that after an investigation of the subject, he concurs in my view that the act of 1880 does not abolish the exoneration doctrine in this state, and that the two cases last mentioned should, therefore, be overruled.