The bill of complaint in this case was filed for the construction of the third paragraph of the will of Horace Hutchins *Page 498 
Work, Jr., who died June 25th, 1946. The will was admitted to probate July 8th, 1946, by the surrogate of Morris County, Mr. Work was survived by his wife and three minor children under the age of fourteen years.
The pertinent part of the paragraph, for which construction is prayed, is as follows:
"Thirdly: If my said wife shall survive me, I give to my trustees hereinafter named all the rest, residue and remainder of my estate, real and personal, whatsoever and wheresoever situate, In Trust, Nevertheless, to hold during the life of my said wife, to collect the income thereof, (making investments and reinvestments of principal at pleasure), and to apply the net income thereof quarter-annually as follows:
"One-half thereof, less a sum equal to one-half of the net income produced by a certain Deed of Trust dated June 4th, 1940, made by Leonie T. Work to Chemical Bank and Trust Company, for the quarter immediately preceding the date of application, to the use of my said wife during her life and the balance of the net quarterly income thereof as follows: three-eighths thereof to the use of my son, Horace III, and if be not living, to the use of my said wife; three-eighths thereof to the use of my son Frederic and if he be not living, to the use of my said wife; one-fourth thereof to the use of my daughter Leonie and if she be not living, to the use of my said wife, * * *."
The deed of trust, referred to in the foregoing paragraph, was a voluntary personal trust agreement for the management, investment and reinvestment of certain securities given by the testator, in his lifetime, to his wife. The trust was created by the wife, and the testator and the Chemical Bank and Trust Company were the trustees thereof. Paragraph "Seventeenth" of the deed of trust reads as follows:
"Seventeenth: The Grantor (testator's wife, Leonie T. Work) shall have the right from time to time to modify, alter or revoke this Agreement in whole or in part * * * and in the event of such revocation, the Trustees * * * shall deliver to the Grantor the property held by them * * *."
Shortly after the death of the testator, his widow, on August 21st, 1946, exercised her right to revoke the said deed of trust. Thereupon the Chemical Bank and Trust Company, as surviving trustee, paid over, delivered and distributed to *Page 499 
her the undistributed income thereof together with the entirecorpus which, at that time, had a market value of $286,941.48.
The widow claims that after the date of revocation, she is entitled to receive quarterly during her lifetime, one-half of the entire net income from the trust fund comprising her husband's residuary estate without deduction for any income from the revoked deed of trust.
It is claimed on behalf of the minor children that this court should direct the complainants, when distributing the net income from the trust fund from the residuary estate, to take into account the income derived from the avails of the deed of trust which was created and later revoked by their mother. It is suggested that to accomplish this the court should fix a reasonable rate of return to be expected from the corpus of the revoked trust or that the widow be required to segregate thecorpus of the revoked deed of trust and report to the complainants quarterly the net income actually derived therefrom, one-half of which should be deducted from the widow's share of the income under the will.
In construing a will, it is the duty of the court, if possible, to arrive at the intention of the testator, but the intention to be determined is not that which existed subjectively in the mind of the testator but that which is expressed objectively in the language of the will. This court may not make a new will. It will not arrive at the testator's intention by surmise, conjecture or speculation. The court will be guided by the language of the will where there is no ambiguity. March v. Norristown Penn TrustCo., 123 N.J. Eq. 282, 285.
In the present case, testator knew or is charged with knowledge of the terms of the deed of trust which his widow revoked subsequent to his death. He was one of the trustees. At the time of its creation, he subscribed his name thereto. From the time the trust was created to the time of his death he was active in administering the trust. His only occupation was investing his money and collecting the income. It must be assumed, therefore, that when the will was executed, the testator knew of his wife's power of revocation and the effect which such revocation would have upon the provisions of his will. He knew that if his wife exercised that power *Page 500 
the deed of trust, as such, would be non-existent and non-productive of income. Nevertheless, with this knowledge he made no alternative provisions in his will with reference to the income to which his wife would be entitled if she exercised her power to revoke the deed of trust.
It may be that testator anticipated that his wife would not revoke the deed of trust. As stated above, a will cannot be construed by mere conjecture as to testator's intention. SeeStout v. Cook, 79 N.J. Eq. 573, 579, wherein the Court of Errors and Appeals cited with approval the following language of Lord Chancellor Halsbury:
"Courts are not at liberty, because an event has happened which the testator has not provided for, to disregard the ordinary rule of construction that words must be read according to their natural and reasonable meaning, and inject into the will a provision which the testator would probably have made had he contemplated the happening of the contingency."
Immediately upon the revocation of the deed of trust, it became non-existent as such and non-productive. It produced nothing because the revocation destroyed its ability to produce. I have concluded, therefore, that the testator's widow is entitled, from and after the date of the revocation of the deed of trust, to one-half of the net income from the trust fund comprising her husband's residuary estate without deduction for any income from the revoked deed of trust.
The testator directed the trustees to pay the net income of the trust quarterly to the beneficiaries. The first payment of the net income was due to them on September 25th, 1946, which was three months after testator's death. The beneficiary is entitled to income from the time of the death of the testator. Scott onTrusts 1277 § 234. The net income produced by the revoked deed of trust for the quarter immediately preceding the date of September 25th, 1946, amounted to $3,174.87 according to the schedule furnished me by counsel. One-half of this sum, or $1,587.44, should be deducted from the income derived from testator's trust to which the widow is entitled.
I will advise a decree in accordance with these views. *Page 501