Complainant trustee holds for distribution the corpus of a testamentary trust established by Edith Hand Leaming, deceased. Testatrix (then the wife of the late Edmund B. Leaming, a Vice-Chancellor of this court) made her will January 20th, 1915; a codicil was added April 8th, 1915; and a second codicil was added in 1922. The death of testatrix occurred December 15th, 1922.
By paragraph two of the will, a trust is created of certain stocks, bonds and mortgages, and real estate; after the payment of one small legacy from principal, the trustee is directed thus:
"* * *; and said trustee shall pay to my beloved husband, Edmund Bennett Leaming the net income of said property, at convenient periods, during the term of his life; at his death said trustee shall pay the net income to or for the use of my son, Edmund Bennett Leaming, Junior, if he survive my said husband, until he arrives at the age of twenty-five years, at which time the principal of said trust estate shall be paid to my said son if my husband be then deceased, and if my husband be not then deceased the principal sum to be paid to my son at the decease of my said husband. If my husband survive me and at his death my said son is not living, then upon the death of my said husband said trustee shall pay the net income of my trust estate to my brother, Daniel W. Hand, if he be then living, during the term of his natural life, and at his death, or if he at said time be dead, said trustee shall pay the principal of my trust estate to the children of my said brother, Daniel W. Hand, then living, in equal shares, (the child or children of any deceased child to represent the parent)."
The first codicil provides:
"In my will dated January 20th, 1915, I have directed that the income of the trust property be paid to or for the use of my son after the decease of my husband and the principal paid to him upon *Page 330 
his attaining the age of twenty five years and have provided for the income and principal to go to others in the event of my son's death before he becomes entitled to enjoy under the will. In these provisions I have overlooked the contingency that my son might die and leave issue. Should my son die before he becomes entitled to enjoyment under my said will and leave issue it is my will that the issue, if alive at the time my son would have enjoyed either income or principal if alive, stand in the place of their father and receive under my will precisely the same as their father would have received in like circumstance if alive, but with this difference only; as the law allows the trust to continue only during the life of one living and twenty years thereafter the principal shall be paid to the issue of my son, if alive, at the end of twenty years after my son's death."
The second codicil has no bearing on the questions presented herein, and need not be quoted.
It should be remarked also that by paragraph four of the will of January 20th, 1915, the entire residuary estate is given to testatrix' husband.
Mrs. Leaming's son, Edmund B. Leaming, Junior, survived her by less than five months; he died May 5th, 1923, aged nine years.
Besides her son, there survived testatrix, her husband, Edmund B. Leaming, who died September 23d 1932; her niece, Agnes Hand (daughter of Daniel W. Hand), who died February 12th, 1933; and her brother, Daniel W. Hand, who died September 28th, 1945.
The income from the trust was paid to Vice-Chancellor Leaming (the husband) until his death; and thereafter to Daniel W. Hand (the brother), until his death.
Daniel W. Hand had three children, to wit: Daniel W. Hand, Junior, who died in 1919, unmarried and childless; Agnes Hand, who died in 1933, unmarried and childless; and, an unnamed child who died at birth many years ago.
Ella Reed Hand, widow of Daniel W. Hand (his second wife, to whom he was married in 1933), claims title to the corpus and accumulated income of the trust, upon this theory: That Agnes, trustor's niece, was vested of a remainder estate at the time of her (Agnes') death; that this estate passed to Agnes' father, Daniel W. Hand, upon Agnes' death, intestate, on February 12th, 1933, unmarried, childless, and leaving only her father as her next of kin; and that under the *Page 331 
will of Daniel W. Hand she, the said Ella Reed Hand, is executrix and sole legatee and devisee.
Opposing the claim of Ella Reed Hand, all of the other answering defendants say that the gift to Daniel W. Hand's children (or their issue) lapsed by reason of the failure of any of those children, or issue of any of such children, to survive the life tenants, and that, accordingly, the trust property passes into testatrix' residuary estate and thence to Edmund B. Leaming's executor for distribution under his will.
The problem, therefore, resolves itself into a determination of the quality of the interest of Agnes Hand, daughter of testatrix' brother, Daniel W. Hand. Was it (1) a contingent remainder; (2) an unqualifiedly vested remainder; or (3) a vested remainder subject to divestment?
The direction of the will is that upon the death of Edmund B. Leaming, or Daniel W. Hand, whichever occurs last, "said trustee shall pay the principal of my trust estate to the children of my said brother, Daniel W. Hand, then living, in equal shares (the child or children of any deceased child to represent the parent.)" (Italics supplied.)
In the case of Kahn v. Rockhill, decided by Vice-Chancellor Jayne, in 1942, and reported in 132 N.J. Eq. 188; 28 Atl. Rep.
2d 34; affirmed on the opinion below, 133 N.J. Eq. 300;31 Atl. Rep. 2d 819, the will before the court read:
"Sixth, — From and immediately after the decease of my said daughter Mary, (and of my said wife, in case she shall survive our said daughter,) I give, devise and bequeath all of the principal of my said residuary estate, of whatever the same may consist and wherever situate, then remaining, unto my grandchildren, children of my said daughter Mary, then living and the issue of any one or more of such grandchildren as shall be then deceased, leaving lawful issue, him, her or them surviving, share and share alike. Such issue to take the parents share or shares."
In that case, as in this, counsel who maintained that the remainder interests were vested — not contingent — leaned heavily upon the decision written by Mr. Justice Trenchard for our Court of Errors and Appeals in Clement v. Creveling, 83 N.J. Eq. 318; 91 Atl. Rep. 89. Vice-Chancellor Jayne pointed out that in the Clement Case the testator did not *Page 332 
confine his gift to "my then living heirs" or "to my heirs, then living," whereas the will before him provided that the estate should go to grandchildren "then living" (that is, at the termination of the particular estate), the issue of any deceased grandchild to take the parent's share. Moreover, it will be observed that in the Clement Case the court found that, aside from all the other doctrines of construction or interpretation, the testator had made his intention clear that there should be an immediate, not a future, vesting. At p. 320 (83 N.J. Eq.), the court says: "We think it was not the testator's intent that the distribution of the whole of his residuary estate should be postponed until the death, both of his wife and her niece.Standing alone that would be the natural effect of the sixthparagraph of the will. But to so construe it is to disregard the provisions made for Emma Chambers after the death of the testator's wife. She died in 1908. Upon her death, the will, * * * imposed a present duty upon the executors, namely, `to retain sixty shares of the said stock.' The retention of the sixtyshares involves a disposition of the other five hundred fortyshares, and those shares are to be disposed of in accordance with the direction of the testator contained in the sixth paragraph of his will." (Italics supplied.) Again, (at p. 322), the court says: "Apart from the context, the gift to the nieces of the testator after the death of their mother would not vest until their mother's death, and would depend upon the contingency of their surviving her. Where the time is annexed, not to the payment merely, but to the gift itself, the legacy does not vest until the period arrives."
So also, Howell, Executor v. Green, Administrator,31 N.J. Law 570. This case is relied upon by counsel for Ella Reed Hand herein, and was cited by Mr. Justice Trenchard in his decision of the Clement Case. The gift was to M. for life "and after her decease I give and bequeath the said one thousand dollars to her two daughters, viz., Deborah and Sarah, equally to be divided." There the remaindermen are specified by name and there is neither a plain direction nor a discernible intention to postpone the vesting of the remainder. (The right to possession and enjoyment of the principal being delayed merely to let in the life interest M.). *Page 333 
Likewise, in Thomas' Executors v. Anderson's Administrator,21 N.J. Eq. 22, cited herein in support of Mrs. Hand's claim, and also referred to in the Clement Case, supra, the remainder was clearly vested in a specific legatee immediately upon the death of testator, subject merely to a life estate. By no possibility could there be uncertainty as to person or event, nor was the legacy couched in words of future gift ("then living" and the like).
In his decision of Kahn v. Rockhill, supra, Vice-Chancellor Jayne holds (at p. 195): "The interest of the bankrupt [a grandchild of testator] is undoubtedly contingent. The decisions already cited, principally, Wilkinson v. Sherman, supra
[45 N.J. Eq. 413]; Cantine v. Brown, supra [46 N.J. Law 599];Cain v. Belden, supra [93 N.J. Eq. 567]; Tantum v.Campbell, supra [83 N.J. Eq. 361], also impel the conviction that the present interest of the bankrupt as a grandchild of the testator is contingent as to the person in whom it may ultimately vest." The Vice-Chancellor supports his finding with the citation of many precedents in our own state, and the following quotation from 1 Tiffany on Real Property, § 136: "`A gift in remainder to those of a class of persons who may be surviving at a future time, as at the termination of the particular estate, iscontingent because, till then, the remaindermen cannot be ascertained. So, a gift to A for life, with a remainder to his children or his issue living at his death, creates a contingent remainder, since the remaindermen cannot be ascertained till A's death.'"
I conceive that if there was any uncertainty before, the question has been definitely set at rest by the affirmance of the decision in Kahn v. Rockhill, supra, to the effect that a gift to a class whose members are to be ascertained upon the occurrence of a future event, certain to occur, is not a vested estate subject to the disposition and control of a prospective taker prior to the occurrence of the specified event. The decisions of the courts of our sister states, and of the English courts, are to the same effect. See the cases referred to in 41Words and Phrases 519 et seq., under the title "Then living." And compare the annotations in 49 A.L.R. 187, and127 A.L.R. 610. *Page 334 
The will now before me disposes of the remainder of the trust in almost the identical language used by the testator in theKahn-Rockhill Case, and I shall follow the decision in that case. Here no member of the designated class, nor issue of any member, survived the termination of the particular (successive life) estates. Testatrix may have anticipated such a contingency, or she may not; at all events, she did provide a residuary clause in her will. And one, at least, of the offices of a residuary clause is to serve in just such a situation as arises here.
Obviously, the same law must be applied, and the same result reached (as to vesting), whether Agnes had children, or was childless. Now, let us suppose that Agnes (having predeceased the second life tenant) had left a child surviving her, and that this child survived the life tenants. Can it be said that Agnes was vested of a remainder estate, and that her child had nothing — that Agnes had possessed an estate which she could have disposed of in the lifetime of the life tenants — an estate which could have been levied upon and sold by a judgment creditor? If so, how shall we give effect to testatrix' direction that "the child or children of any deceased child to represent the parent?" I think it manifest that Agnes, in the supposed circumstances, would have had a contingent estate only, and that the estate became vested — fixed — in Agnes' child upon the death of the life tenants.
Agnes had no child. Nevertheless, that changes nothing so far as concerns the application of the law to her status during the running of the particular estates. By the terms of the will, the ascertainment of the actual persons who were to get the remainder estate (whether it be Daniel W. Hand's children, or his grandchildren, depending upon whether children be "then living," or deceased and survived by children), cannot be determined until "then," that is, the termination of the particular estates. Until "then" it is uncertain who will be "then living;" until "then" the right to the remainder cannot become fixed in the persons entitled to it. It must follow, therefore, that Agnes' death, prior to the event which she was required to survive in order to take, ended her prospects; and there being no children to take in substitution *Page 335 
for her, the remainder found lodgment in the residuary estate.
Counsel for Mrs. Hand argues (very properly) that the policy of the law is to favor the vesting of estates at the earliest possible time permitted by the context of a will. Upon this premise, it is urged that the death of testatrix — not the death of the life tenants — is the event upon which the vesting of Agnes' estate depends. If it be logical to say that Agnes' interest was unqualifiedly vested prior to the death of the survivor of the successive life tenants (in disregard of the provision that she be "then living"), it is as logical to say that the remainder estate of Edmund B. Leaming, Junior, testatrix' son, was unqualifiedly vested prior to his twenty-fifth birthday (in disregard of the provision that "at which time" — his twenty-fifth birthday — payment of the corpus
be made to him). Of course, such a proposition is untenable. But if it were indulged, it must follow that upon Edmund, Junior's, death his vested remainder passed to his father as his only next of kin. Thus by a strange coincidence, the same result would be reached by a false application of law as by its true application.
In construing a will as carefully drawn as the one now before the court, one pauses before concluding that the author failed to anticipate and provide for the situation which has developed. It would appear, however, that this may be the case. Nevertheless, courts are enjoined to assume that a testator has said exactly what he intended to say, and all that he intended to say. Mr. Justice Heher, in his recent opinion in Ricardo v. Kelly,134 N.J. Law 540; 48 Atl. Rep. 2d 897, warns that:
"* * * the judicial authority is not at liberty to rewrite the will; and there would be such revision if the courts undertook to make provision for an unforeseen contingency in accordance with what it conceives the testator would have done if the contingency had been foreseen. The presumption against partial intestacy, while strongly favored, does not prevail unless the testamentary design of complete testacy reasonably appears. Where there is not a complete disposition of the testator's property, or through lack of foresight there *Page 336 
is no provision for the contingency which has actually happened, the courts cannot supply the omission under the guise of construction. And it does not matter that the failure to provide for the contingency which occurred was purely inadvertent rather than intentional. The judicial authority cannot insert the provision which it apprehends the testator would have made if that precise situation had been in his view, for that would constitute a re-making of the will."
Vice-Chancellor Kays gives expression to the same restraining principle in Morristown Trust Co. v. Work, 139 N.J. Eq. 497;52 Atl. Rep. 2d 64, in the following language:
"In construing a will, it is the duty of the court, if possible, to arrive at the intention of the testator, but the intention to be determined is not that which existed subjectively in the mind of the testator but that which is expressed objectively in the language of the will. This court may not make a new will. It will not arrive at the testator's intention by surmise, conjecture or speculation. The court will be guided by the language of the will where there is no ambiguity. March v.Norristown Penn Trust Co., 123 N.J. Eq. 282, 285."
The latter quotation is particularly appropriate here, with respect to Mrs. Hand's suggestion that the corpus of the trust estate came to testatrix from her father and that testatrix desired it to remain in the Hand family. In the first place, it is a matter of pure conjecture that the real estate devised to Mrs. Leaming by her father (who died in 1889) formed any part of the trust herein; secondly, testatrix nowhere states that thecorpus of the trust is "Hand" property nor that it is part of her testamentary scheme to insure that "Hand" money stay in the Hand family. Nor, indeed, would such a scheme, if apparent, be advanced by an award to the claimant, Ella Reed Hand, whom testatrix never knew and whom Daniel W. Hand married ten years after testatrix' death.
Counsel may present a decree directing complainant to make distribution of the trust fund to the executor of the estate of Edmund B. Leaming. *Page 337